### H. H. HANNEMAN v. F. W. GRATZ.
### H. HAUSER v. F. W. GRATZ.[1]

January 21, 1927.

No. 25,693.

**Decision sustained that blue sky law had not been violated.**

The evidence sustains the findings of fact that the money sought to be recovered of defendant was not parted with in consideration of the certificate declared on in the complaint as being sold and issued in violation of c. 429, Laws of 1917—the blue sky law.

Licenses, 37 C. J. p. 276 n. 30.

Plaintiff in each case appealed from an order of the district court for Hennepin county, Leary, J., denying his motion for a new trial. Affirmed.

*Albert Hauser*, for appellants.
*W. A. Anderson*, for respondent.

HOLT, J.

The two cases were tried together. Plaintiff in each case appeals from the order denying a new trial, after findings of fact and conclusions of law in defendant's favor had been filed.

The actions were brought to recover moneys paid for certificates of shares in the Range Petroleum Company, issued by defendant as

[1]Reported in 211 N. W. 961.

secretary and one Hall as president. The complaint alleged that the company was not incorporated and had never complied with Laws of 1917, p. 635, c. 429, known as the blue sky law; that defendant was not the owner of the shares; that he sold the same as a dealer to plaintiffs in the course of continued and successive transactions of similar nature with other persons; and that defendant had not been licensed by the securities commission of the state. The answer contained a general denial, but admitted that the company named was not incorporated, and had not complied with the blue sky law, and alleged that a true copy of the contract under which the money was received from plaintiffs was attached to and made a part of the answer, and further averred that about one year thereafter, by mutual agreement of all parties, a trust agreement was entered into, pursuant to which the certificate set forth in the complaint was issued.

The court found "that the allegations set forth in plaintiff's complaint herein have not been established" and as conclusion of law that plaintiff take nothing. The memorandum attached to the findings is challenged by numerous assignments of error. This is of no avail. The memorandum merely states the reasons for the decision. It is doubtful whether under our practice the assignments of error are sufficient to present any proposition reviewable by this court. But we assume the real merit in the claim of each plaintiff depends on whether the money sought to be recovered was parted with under the contract set up in the answer, or was paid for the certificate declared on in the complaint. For the present, and for the purpose of this decision only, we shall assume that the issuing of the certificate set out in the complaint for a money consideration was prohibited by the blue sky law, since no license to dispose of such certificates had been granted by the state securities commission.

The evidence clearly sustains the contention of defendant that plaintiffs paid their money nearly a year before the certificates set out in the complaints were issued, and that they did so pursuant to the agreement pleaded in the answer as Exhibit A. Before considering the contents of that exhibit, the situation of the parties hereto

and those interested with them should be briefly mentioned. The time was in the winter and spring of 1919. Discoveries of oil in different counties of Texas were being made, and some persons were reaping fortunes therefrom. W. M. Hall, then of Minneapolis, had been in Texas and made profitable investments for himself. He was associated with defendant and some other Minneapolis men, interested in a small corporation dealing in Minnesota lands and located in one of the office buildings of Minneapolis. Some of these men were well acquainted with plaintiff Hauser, a business man of long experience. The plaintiff Hanneman, an accountant, was a son-in-law of Hauser, and through him or his sons became acquainted with defendant. Hearing of the money made in oil lands, some seven or eight persons, including defendant but neither plaintiff, raised $7,000, which was intrusted to Hall with which to secure oil lands or leases on his next trip to Texas. Hall went, but returned without investing because he could not get the properties he deemed profitable. He soon went there again and secured 14 different oil leases or interests in supposed oil bearing lands, obtaining from one of these tracts a royalty from a well in operation. Plaintiff Hauser was by defendant informed of what was being done and invited to the office mentioned. He went there and became a steady visitor. All became enthused at the prospect of great wealth, speedily to be acquired from a sale of some of these leases and a development of the others. And the result was the making of Exhibit A by plaintiffs and others and the payment of the money in consideration thereof. This agreement, so far as here important, reads:

"We, the undersigned, subscribe the amounts set opposite our names respectively for the purchase of the following described leases and royalty from William L. Hall, transfer and conveyance thereof to be made to F. W. Gratz, as trustee for the undersigned subscribers. Each subscriber on payment of his subscription shall have such an interest in the properties purchased as his subscription bears to the total purchase price of said properties, the purchase price being the sum of $79,950.00. The properties purchased or contracted for and the respective prices thereof are numbered and

described as follows: * * * Upon the full and complete payment of the purchase price of said properties, within sixty days from date hereof, the said William L. Hall agrees to deliver said leases and royalty by such conveyance and assignments as are usual and customary in such cases and that good title thereto shall vest in F. W. Gratz as trustee aforesaid, * * *"

This was signed by W. L. Hall, vendor, by defendant and those who paid money thereunder, except plaintiff Hanneman, who claims he saw the list but did not personally sign it. Hauser signed and paid the money in June, 1919, and Hanneman paid his money the next month. The expectations of those who entered the venture were not realized as speedily as hoped for, and defendant did not wish to remain as sole trustee. So in May, 1920, one of the investors, a lawyer of high standing, was asked to draw an agreement that would in part relieve defendant and protect all. He prepared a lengthy document, Exhibit B, a trust agreement, which was executed by W. L. Hall as one of the subscribers (presumably of Exhibit A), and by him and four others as trustees, and pursuant to the terms thereof the certificates set forth in the complaints were issued. There is no intimation in the record that, when the money was received from plaintiffs, Exhibit B or the issuance of any certificate was contemplated by anyone. The lawfulness of the transaction must therefore rest upon the agreement Exhibit A. If that cannot be considered to be within the blue sky law, this action must fail. In our opinion it is not. It is entirely unlike the schemes and palpable efforts to evade the law which were considered in State v. Gopher T. & R. Co. 146 Minn. 52, 177 N. W. 937; State v. Evans, 154 Minn. 95, 191 N. W. 425, 27 A. L. R. 1165; State v. Ogden, 154 Minn. 425, 191 N. W. 916; State v. Nordstrom, 169 Minn. 214, 210 N. W. 1001. Exhibit A is a simple purchase of an interest in lands or leases of land. The court had ample evidence to warrant the conclusion that no intention was then harbored by any of those interested in the venture to incorporate and sell stock, or to organize for the purpose of selling shares or certificates like those sued on. The parties to the venture then thought the

properties acquired could be quickly disposed of at great profit or else successfully developed. There was some testimony offered by plaintiffs tending to prove that when they parted with their money defendant and others of those originally associated suggested that an organization would thereafter be formed and stock issued, but this was denied by defendant and his witnesses, and the court was well within its rights in accepting the version of the latter. Taking that view, and as expressed in Exhibit A, these parties, including plaintiffs, voluntarily associated themselves in the joint venture of acquiring a number of oil leases, whether as tenants in common or as partners is immaterial. The blue sky law cannot be construed in such manner as to prohibit persons from associating for the purchase of lands or interests therein as partners or otherwise.

These actions were wholly predicated upon there being a violation of Laws of 1917, p. 635, c. 429, as amended, when plaintiffs paid their money to defendant pursuant to the agreement Exhibit A. The actions were not for an accounting, and it was therefore immaterial whether assignments or conveyances had been made by Hall as agreed in the exhibit mentioned, or whether there had been such to the trustees named in Exhibit B.

The decision is supported by the evidence.

Order affirmed.