## STATE v. DAVID GOLDEN.[1]

November 19, 1943.

No. 33,366.

[1]Reported in 12 N. W. (2d) 617.

*David Golden* and *John H. Horeish,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, and *James F. Lynch,* County Attorney, for the State.

MAGNEY, JUSTICE.

This prosecution is based upon the provisions of certain statutes. As a determination of the questions presented rests chiefly upon the application of these statutes to the facts, it may be well to have them quoted at the outset. L. 1927, c. 68, § 1, Minn. St. 1941, § 80.30 (Mason St. 1927, § 4000-1), provides as follows:

"That no person shall sell to any person in this state any oil or gas lands, or any lands represented to contain or to be a prospect for oil or gas, or any interest therein or thereunder or royalties therefrom, unless and until such lands, interests or royalties shall have been first registered for sale by the department of commerce (commerce commission) of this state ᐧ* * *."

Section 8 of the same chapter, *Id.* § 80.01, subd. 13 (§ 4000-8), provides:

"As used in this act the words 'person,' 'sale,' 'sell,' 'sold,' 'broker,' 'agent,' and any other word or words requiring a definition thereof,

shall mean the same as in Chapter 192, Laws 1925, commonly known as the blue sky law."

Section 9, *Id.* § 80.36 (§ 4000-9), provides:

"Any transaction involving or relating to oil or gas lands, or lands represented to contain or be a prospect for oil or gas, or any interest in or under such lands, or royalties therefrom, which comes within the purview of the blue sky law, being Chapter 192, Laws 1925, as now existing or hereafter amended, shall be controlled by said blue sky law; but any transaction or offense fairly coming within the provisions of both said blue sky law and this act may be dealt with by the commerce commission, or prosecuted by the proper public officers, under either of said laws."

L. 1925, c. 192, § 1(2), as amended, *Id.* § 80.01, subd. 3 (§ 3996-1[2]), gives the following definitions:

" 'Sale,' 'sell' or 'sold' means and includes any disposition for value, *an offer to sell, a solicitation of a subscription or sale, or an attempt to sell in any manner* an option of sale, a subscription, a pre-organization subscription or certificate, * * *" (Italics supplied.)

Under these statutes, an amended information charged defendant, David Golden, with the offense of offering to sell to one J. E. Hanstein, a certain interest in oil lands situated in the state of Oklahoma, the said oil lands not having first been registered for sale by the state department of commerce and said offer having been made in the course of repeated and successive offers for the sale of like interests. The jury found the defendant guilty. He appeals from the judgment.

The main question raised here is whether defendant's activities were in violation of the statutes quoted. He contends that the evidence was insufficient to sustain the verdict.

The land involved was not registered. For several years prior to November 1941 defendant was attorney and investigator for the United States Securities and Exchange Commission. He

resigned the position and opened a law office in Tulsa, Oklahoma. In the early part of November 1941 he came to St. Paul to interest several persons he knew in an oil proposition. Among others, he spoke to Hanstein, the person named in the information. He suggested that Hanstein investigate a certain described oil property in Oklahoma which he was representing. The name of the owner could not be divulged. He stated that the option would have to be taken within a very short time and that he had to have a certain amount of earnest money to obtain the option. Hanstein testified: "Mr. Golden asked me if I would be interested in investing some money in this oil transaction—property." Defendant wanted the money in large blocks and requested $2,500, of which $500 was to be used for expenses. He said that he and his associate, a Mr. Cooper, were to receive some bonus stock from sale of the interest. This bonus stock was to be held in escrow pending certain developments. He thought the property could be bought for $20,000, and that it would take $2,000 or $2,500 above the purchase price for expenses.

On November 17, 1941, defendant wrote Hanstein that he had consummated a contract for the purchase of the oil and gas lease and that he secured it for $17,250 instead of $20,000. He would therefore require only $20,000, of which he already had $2,500, instead of $22,500, which he had expected would be necessary. He wrote:

"During my conversation with you, you indicated that you would be willing to invest about $1,000 in the proposition. * * * would not accept * * * less than $2,500. * * * If we accepted investments of lesser amounts we would have a large stockholder list which would add to the expense of administering the affairs of the corporation."

Enclosed in the letter was a "proposal." It stated that defendant and two associates had contracted to purchase a ⅞-interest in an oil and gas lease for $17,250; that they had made a substantial payment; that the expenses brought the cost to $20,000; that they were

entitled to a reasonable profit; that they needed $17,500 to con-summate the transaction; that defendant intended to organize a corporation with a capitalization of $27,000—270 shares; that 200 shares would be represented by actual cash invested and 70 shares would be set aside for defendant and his associates as profit. It stated: "I will not accept any investment in a sum of less than $2,500." Also, "if you believe that you will be willing to invest the sum of $2,500 or more in this proposition * * * communicate with me by return mail." Substantially the same proposition was submitted orally and in writing to witnesses Harold Bergman, Theodore W. Koch, and Thomas H. Garrett.

The evidence supports the verdict. The statutes prohibit an offer to sell, a solicitation of a subscription or sale, or an attempt to sell in any manner whatsoever any oil or gas land, or lands represented to contain or to be a prospect for oil or gas, or any interest therein or thereunder or royalties therefrom, unless and until such lands, interests, or royalties shall have been first registered for sale by the state department of commerce. It is evident that the legislature intended to make it legally impossible for a person to sell or offer to sell any type of interest in oil land without first registering it. When persons associate themselves together in the purchase of land, they do not come within the prohibition of the blue sky law. This is not such a case, and Hanneman v. Gratz, 170 Minn. 38, 42, 211 N. W. 961, 963, relied upon by defendant, has no application to the facts here. In that case the parties "voluntarily associated themselves in the joint venture of acquiring a number of oil leases." Defendant here did not consider state's witnesses as associates, and they were not such in fact. He writes:

"Two of my associates and I have contracted to purchase the full $\frac{7}{8}$ working interest in an oil and gas lease * * *. My associates and I, of course, are entitled to a reasonable profit out of the proposition for finding and developing it. * * * 70 shares of the stock will be set aside for my associates and myself as profit for handling and developing this transaction. * * * I will not accept any investment in a sum of less than $2,500.00. * * * If you be-

lieve that you will be willing to invest the sum of $2,500.00 or more * * * communicate with me * * *."

This clearly indicates that defendant was offering to sell state's witnesses an interest in oil lands. He was not proposing a joint venture.

■ Defendant assigns as error the refusal of the court to dismiss at the close of the state's case. This court has in several cases held adversely to his contention. In State v. Traver, 198 Minn. 237, 238, 269 N. W. 393, this court said:

"* * * if after denial of his motion to dismiss defendant elects to proceed further and present evidence on the issue or issues and further evidence is received, whether by defendant's witnesses or by the state, the question of the sufficiency of the evidence to sustain the verdict or decision is then to be determined on appeal by a consideration of all the evidence presented in the case."

To the same effect are State v. Baker, 161 Minn. 1, 200 N. W. 815; State v. Omodt, 198 Minn. 165, 269 N. W. 360; State v. Tsiolis, 202 Minn. 117, 277 N. W. 409.

■ Defendant's requested instructions had no application to the evidence in the case and were properly denied.

■ Defendant charges misconduct of the county attorney in his argument to the jury. The language used was stronger than warranted by the testimony. However, in view of the recited facts in the case, we think no prejudice resulted.

Affirmed.

Mr. Justice Loring, absent because of accidental injuries, took no part in the consideration or decision of this case.