Commonwealth *v.* Fernau, Appellant.

Argued March 19, 1954. Before HIRT, ROSS, GUN-THER, WRIGHT and ERVIN, JJ.

*W. Hensel Brown*, for appellants.

*Daniel J. McCauley, Jr.*, Special Deputy Attorney General, with him *William C. Storb*, District Attorney and *Frank F. Truscott*, Attorney General, for appellee.

OPINION BY ROSS, J., July 13, 1954:

This is a prosecution for an alleged violation of The Pennsylvania Securities Act (Act of June 24, 1939, P. L. 748, as re-enacted and amended by the Act of July 10, 1941, P. L. 317, 70 PS sec. 31 et seq.). The defendants were tried before a judge sitting without a jury pursuant to section 1 of the Act of June 11, 1935, P. L. 319 as amended, 19 PS sec. 786. The court below overruled defendants' demurrer to the Commonwealth's evidence and found them guilty, and after sentence was pronounced they took this appeal.

The defendants were found guilty of violating section 22 of The Pennsylvania Securities Act, supra, 70 PS sec. 52, which provides, inter alia: "Any dealer or salesman who shall in this State, without being regis-

tered hereunder . . . (b) engage in the business of inducing holders of securities to effect the sale thereof through a person registered. hereunder or otherwise, directly or indirectly, in order to produce funds to pay for other investments sold by such dealer or by such salesman for a dealer . . ." shall be guilty of a misdemeanor.

In 1951 the defendants, who were not registered as dealers or salesmen under the Act, made several visits to the home of Christian R. Martin in Lancaster County. On each of these occasions Martin delivered corporate stock or cash or both to the defendants and received from them oil leases on land located in New Mexico, and executed by that state, and fractional interests in certain oil wells also located there.

Section 2(f), 70 PS sec. 32(f), provides, inter alia: "The term 'dealer' means any person other than a salesman who engages . . . either for all or part of his time, directly or through an agent who is not registered hereunder as a dealer, in selling securities issued by another person. . . . The term 'dealer' also includes any person other than a salesman who engages . . . in the business of inducing holders of securities to effect the sale thereof, through a person registered hereunder or otherwise, directly or indirectly, in order to produce funds to pay for other investments sold by such person . . ." Section 2(f) then places various limitations on the meaning of "dealer" as above defined, providing that "None of the following transactions shall constitute the person engaging therein a 'dealer' within the meaning of this act, that is to say: (1) Sales of Securities, or of certificates of deposit for securities, issued or guaranteed by any of the following: The United States or any territory or insular possession thereof; the District of Columbia; any state of the United States or any political subdi-

vision, public instrumentality, or agency of a state or territory, or any board, agency or commission created by the joint action of two or more states, or a person created and acting as an instrumentality of the Government of the United States pursuant to the authority of the Congress of the United States."

Defendants contend that they did not violate section 22(b) for the reason that the oil leases transferred to Martin were securities of the State of New Mexico and, therefore, the transactions referred to above did not constitute them dealers within the meaning of the Act.

It should be noted that while the fundamental element in the definition of "dealer" is the "selling of securities", by the other provisions of section 2(f) a person may be included in the term by engaging in activity of a substantially different nature. By that subsection one is a "dealer" when he sells *investments* in combination with inducing holders of securities to effect a sale thereof to produce funds to pay for such investments under such circumstances that he may be regarded as engaging in that activity as a business.

In our view, the exclusion of persons engaging in sales of securities set forth in section 2(f)(1) from the term "dealer" can properly be related only to that aspect of the definition of "dealer" which contemplates the single activity of engaging in "selling securities". Thus a person unlicensed as a dealer under this Act could not lawfully be convicted of a violation of section 22(a), which related exclusively to the selling of securities, upon a showing that the sales involved were of securities issued or guaranteed by one of the United States, the reason being, of course, that section 2(f)(1) specifically provides that persons engaging in such sales are excluded from the term "dealer".

It is also significant that the conduct comprehended by section 22(b) is the very conduct which will cause a person engaging therein to be included in the term "dealer". It seems clear that the legislature by passage of section 22(b) and the related portion of section 2(f) intended to strike at a particular and nefarious method employed by some persons to relieve others of valuable securities and to foist upon them in return spurious investments or investments of less than equivalent value. It is inconceivable to us that such practice would be any more tolerable to the legislature merely because its ends were promoted by the use of securities issued by one of the United States, however improper that use. It would indeed be a perversion of section 2(f)(1) to construe it in such a way that it would operate to frustrate the legislative intent evidenced by section 22(b). We believe that when read in connection with the other exclusionary provisions of section 2(f) the legislature primarily intended by subsection 2(f)(1) to facilitate the distribution of the enumerated types of securities by permitting sales of such securities without the hindering effect of this Act.

Even if we were to assume that the oil leases were "securities" of the State of New Mexico within the meaning of section 2(f)(1), the defendants would be in no better position. Our understanding of the evidence is that only the oil leases involved were instrumentalities of the State of New Mexico. The transactions involving oil interests would not be affected by section 2(f)(1) and would be sufficient to constitute defendants "dealers" within the meaning of section 2(f).

Section 2(f) includes among transactions not constituting the person engaging therein a "dealer" . . . "(10) The original issuance and sale by any corpora-

tion organized under the laws of this State of its securities in good faith and not for the purpose of avoiding the provisions of this act . . ."

It appears from the evidence that Martin and the defendants were engaged in the formation of a Maryland corporation known as the Tri-State Petroleum Co., Inc., and that Martin became the owner of a substantial number of shares of that corporation and became an officer and director thereof. Defendants contend that the securities and cash surrendered by Martin were in furtherance of the organization of that company and, therefore, no violation of section 22(b) occurred. The answer to this contention is obvious: The Tri-State Petroleum Co., Inc. is not a corporation "organized under the laws of this State."

From the number of transactions involved and their character we have no difficulty in holding that they were not isolated transactions, as urged upon us by defendants, but were repeated and successive transactions of a like character and hence defendants' reliance upon section 2(f)(3) is unjustified. See *Com. v. Summons,* 157 Pa. Superior Ct. 95, 98, 41 A. 2d 697.

Our conclusion is that there is sufficient evidence in the record to sustain the conviction. In measuring the evidence against the provisions of the Act we have not been unmindful that the Act is remedial legislation having as its primary purpose the protection of the investing public and that "the clear intent of the Act is not to be defeated by a too literal reading of the words without regard to their context and the evils which the Act clearly was designed to correct". *Com. v. Yaste,* 166 Pa. Superior Ct. 275, 278, 70 A. 2d 685.

Judgments of sentence are affirmed, and it is ordered that the appellants appear in the court below at such time as they may be there called, and that they

be by that court committed until they have complied with their sentences, or any part of them which had not been performed at the time the appeal was made a supersedeas.