MELVIN E. VIRNIG v. CRAWFORD E. SMITH AND ANOTHER.

90 N. W. (2d) 241.

May 9, 1958—No. 37,372.

*Gross & Nierengarten* and *Mahoney & Mahoney,* for appellant Krause.
*Gross & Nierengarten* and *Lanier, Lanier & Knox,* for appellant Smith.
*Putnam & Spencer,* for respondent.

MATSON, JUSTICE.

Appeal from a judgment rescinding a contract for the sale of an interest in an oil well to be drilled and awarding plaintiff a recovery of the purchase money.[1]

Although the action was in part based on fraud, we are not concerned with that issue since the trial court directed a verdict for the plaintiff on the sole ground that defendants, who admittedly were not licensed under Blue Sky Law, had, as a matter of law, sold unregistered leasehold interests in violation of M. S. A. 80.30, which provides:

"No person shall sell to any person in this state any oil or gas lands, or any lands represented to contain or to be a prospect for oil or gas, or any interest therein or thereunder or royalties therefrom, unless and until these lands, interests, or royalties shall have been first registered for sale by the division."[2]

Defendants, asserting that the trial court erred in so directing a verdict, allege that they were not required to register the sale of the oil lease interests, or to be licensed as dealers or salesmen under the Blue

[1]Eleven other identical actions, each by a different plaintiff, were consolidated with this action for trial in the district court. The appeal herein, pursuant to stipulation of the parties, is to be determinative of the other 11 actions.

[2]Pursuant to § 80.33, the provisions of §§ 80.01, 80.11 to 80.19, and 80.21 to 80.27 are incorporated as a part of §§ 80.30 to 80.36. See § 80.36 which makes it legally impossible for a person to sell or offer to sell any type of interest in oil land without first registering it. State v. Golden, 216 Minn. 97, 12 N. W. (2d) 617.

Sky Act, for two reasons; *first,* because the written agreement between the seller, defendant Smith, and the various purchasers of a leasehold interest created between the parties the relationship of joint adventurers, and *second,* because each sale transaction, under § 80.35, constituted an "isolated sale" not made or occurring in the course of repeated or successive sales.

If the evidence, when viewed in the light most favorable to the defendants, will not sustain a finding that plaintiff purchased the oil lease interests as a party to a joint adventure, or a finding that the sale transaction constituted nothing more than an isolated sale as distinguished from one constituting a part of repeated or successive sales, the trial court's order directing a verdict was proper.

We turn to the facts. Defendant Crawford E. Smith, a resident of Minot, North Dakota, in April 1954, entered into a contract with the California Standard Company whereby the latter assigned to him its entire petroleum and natural gas interests in a certain tract of land in Saskatchewan, Canada. In consideration for the assignment to him, Smith agreed to drill a test well thereon at his own cost. If he failed to strike oil California Standard agreed to pay Smith $15,000 as dry-hole money in return for certain data obtained in the course of drilling the well.

In the latter part of July 1954, defendant Frank Krause, solely of his own volition, visited Smith at Minot. The men had never met before. After explaining that he needed $30,000 to finance the expense of drilling the test well, Smith entered into an agreement with Krause whereby the latter agreed to raise said sum by selling a 1-percent interest in the well for $600 to prospective purchasers. Under this arrangement the $30,000 would be raised by selling a 50-percent interest in the well to other parties. The remaining 50 percent was to be divided whereby Smith retained 40 percent for himself and Krause would receive 10 percent for his services. Smith provided Krause with a number of individual contracts—already signed by him as the designated seller—which the latter could fill out when he sold a percentage interest to his acquaintances and friends.

Krause, who had been in the jewelry business at Blue Earth,

Minnesota, returned to that area to sell the 1-percent interests to his business acquaintances and friends. He sold a 1-percent interest to Virnig on August 4, 1954, for $600 and filled out one of the contracts at that time. About the same time he sold similar 1-percent interests to at least 11 other persons in the Blue Earth area. The purchasers—and they were designated as such in the contracts—were approached by Krause individually. Clearly, each purchaser was induced to enter into the contract without knowing who the other purchasers were. The evidence supports only one conclusion; namely, that there was no concert of action, association of effort, or any understanding whatever by and among the individual purchasers as to the acquirement of an interest in Smith's oil lease.

The sales contract, giving each purchaser a 1-percent interest in the oil lease for $600 (subject to the conditions of Smith's agreement with the California Standard Company), provided that the seller, Smith, should drill the test well to a specified depth without further cost to the purchaser, except that in the event it became necessary to set pipe in the well the purchaser should pay his proportionate share of the completion, operation, and production of such well plus, also, his proportionate share of additional wells subsequently drilled. If the test well proved to be a dry hole, the seller was to pay the cost of its plugging and abandonment.

The evidence compels a finding that none of the purchasers were told of the conditions in the contract between Smith and California Standard, and further that no disclosure whatever was made to any of them that Smith was entitled to $15,000 dry-hole money; that he had reserved for himself a 40-percent interest in the lease; or that Krause was to be paid 10-percent interest for obtaining purchasers of a 1-percent interest.

After the test well turned out to be a dry hole, 12 of the individual purchasers brought separate actions against Krause and Smith for a rescission of the contracts and a refund of their purchase payments. After the trial court directed a verdict for the plaintiff, judgment was entered and this appeal followed.

In the light of the foregoing facts, we turn to the first alleged defense; namely, that the evidence would sustain a finding of a joint

adventure so as to bring the transaction outside the Blue Sky Law. It is, of course, true that, if parties of their own independent volition associate themselves together as joint adventurers for the purpose of *acquiring* oil properties, or any interest therein, and pursuant to their joint effort they do purchase for themselves oil properties or interests, the transaction of purchase and sale so initiated and consummated by their mutual efforts and design falls outside the prohibitions and the registration and licensing provisions of the Blue Sky Law.[3] The mere fact, however, that a sale of oil properties was made to joint adventurers does not of itself avoid the Blue Sky Law since the controlling question is whether the joint adventurers of their own accord associated themselves together for the purpose of acquiring such oil properties or interests. Did any one, or all, of the identical purchase contracts involved herein establish the status of joint adventurers by the purchasers, or by them in association with the defendants? The answer to that question lies in ascertaining whether the purchase contract by its terms, in the light of the circumstances under which the parties were induced to enter into the same, reveals the essential elements of a joint adventure for the purpose of purchasing oil lease interests.

■ This court, in Rehnberg v. Minnesota Homes, Inc. 236 Minn. 230, 52 N. W. (2d) 454,[4] set forth the four essential elements which must be present to constitute a joint adventure.[5]

---

[3]Hanneman v. Gratz, 170 Minn. 38, 211 N. W. 961; State v. Golden, 216 Minn. 97, 12 N. W. (2d) 617.

[4]Followed in Tate v. Ballard, 243 Minn. 353, 68 N. W. (2d) 261.

[5]In the Rehnberg case it was held that an enterprise does not constitute a joint adventure unless each of the following four elements are present, namely:

(a) Contribution—the parties must combine their money, property, time, or skill in some common undertaking, but the contribution of each need not be equal or of the same nature.

(b) Joint proprietorship and control—there must be a proprietary interest and right of mutual control over the subject matter of the property engaged therein.

(c) Sharing of profits but not necessarily of losses—there must be an express or implied agreement for the sharing of profits (aside from profits

One of the basic elements of a joint adventure is that there must be a contract, express or implied, showing that two or more persons did in fact intend to enter into a joint adventure. Absent the intent to create a joint adventure, or the equivalent thereof, none can exist. Here, although several identical contracts exist, the intent to embark on a joint adventure is lacking since the individual purchasers were not even aware of each other's identity when the separate contracts were signed.

Another missing element is that of joint proprietorship and right of mutual control over the subject matter of the contract. The evidence unmistakably shows that there was no right of mutual control among the purchasers. The individual purchaser, plaintiff in this instance, did not, either as to Smith or as to Krause, acquire any right of joint proprietorship and mutual control. Although the parties to a joint adventure may delegate control to a member, there was no delegation here since plaintiff could not know what proprietary or control rights were possessed by either Smith or Krause. The 50-percent proprietary interest secretly retained by defendants cannot be said to have been delegated. At best the individual sales contract by its very terms conferred upon the individual purchaser the mere status of a passive investor. Mutuality of control was conspicuous by its absence.

Another element essential to a finding of joint adventure is a sharing of profits. The uncontradicted testimony of Smith shows that he might well have profited from the $15,000 dry-hole money he received from California Standard. This fact was never disclosed to the purchasers. The argument that this merely indicates that Smith could be compelled to account to the other parties misses the significant point that, from the very inception of the contract, plaintiff never was given a right to these secret and potential profits. The fact that Smith might have been compelled to disgorge any secret profits by an appropriate action for an accounting is of no consequence.

---

received in payment of wages as an employee) but not necessarily of the losses.

(d)  Contract—there must be a contract, whether express or implied, showing that a joint adventure was in fact entered into.

The enterprise in this case—the development of oil lands—was launched by the two defendants agreeing between themselves that they would retain a 50-percent interest in the oil leases. After this agreement Krause, as the unquestioned agent of Smith, then proceeded to sell interests to buyers who never at any time exercised any control over the project. By entering into the separate contracts, the purchasers did not "join" each other and as to Smith merely became individual and passive investors. Krause did not feel obligated to account to the buyers in any way. In fact, the buyers were not even aware of each other's identity. At the end, when the well came in dry, Smith, in fact, collected the $15,000 in dry-hole money from California Standard without accounting to the "purchasers," who were never aware that such a payment had been made. On similar facts the California court, faced with a claim that a joint adventure existed, appropriately said in Goldberg v. Paramount Oil Co. 143 Cal. App. (2d) 215, 222, 300 P. (2d) 329, 333:

"* * * None of this evidence shows any participation by plaintiff in the conduct of the enterprise. Plaintiff was a mere investor. The contract without ambiguity contemplated he was to play the passive role of investor only."

Clearly the trial court was right in holding as a matter of law that the purchase and sale transaction did not involve or constitute a joint adventure.[6]

Upon the undisputed facts in this case, it also follows as a matter of

---

[6]Several of the cases cited by defendants as examples of joint adventures are examples of situations where all the parties met and formed a mutual agreement for the development of oil properties. Sample v. Romine, 193 Miss. 706, 8 So. (2d) 257 (where the parties subsequently acquired oil leaseholds); McCartney v. McKendrick, 226 Miss. 562, 85 So. (2d) 164. Without necessarily approving the result of the case, we note that Grabendike v. Adix, 335 Mich. 128, 55 N. W. (2d) 761, cited by defendants, was a case where all plaintiffs signed a single agreement, apparently at the same time.

In none of the cases called to our attention did one party form individual agreements with the others separately, and subsequently successfully characterize the separate transactions as one joint venture.

law that the sale to the plaintiff was not an isolated sale which would fall outside the statute. § 80.35. The systematic solicitation activities of Krause in the Blue Earth area establishes beyond question that the sale was a part of "repeated or successive sales." We find it unnecessary to review the evidence on this point. See, Commonwealth v. Fernau, 175 Pa. Super. 570, 575, 106 A. (2d) 624, 626.

The judgment of the trial court is affirmed.

Affirmed.