John **GARBO** and Rachel Garbo, Plaintiffs-Appellants,

v.

**HILLEARY FRANCHISE SYSTEMS, INC.,** et al., Defendants-Respondents.

No. 34142.

Missouri Court of Appeals, St. Louis District.

April 4, 1972.

Vincent E. Hartigan, Jr., St. Louis, for plaintiffs-appellants.

Stein & Seigel, Hyman G. Stein, Lewis, Rice, Tucker, Allen & Chubb, F. Wm. McCalpin, St. Louis, for defendants-respondents.

DOERNER, Commissioner.

The petition filed by plaintiffs in this case contained two counts, but we are here concerned with only the second. The court sustained the separate motions of two of the defendants to dismiss Count II for failure to state a claim upon which relief could be granted, dismissed that Count with prejudice as to all of the defendants, and designated its order as a final and appealable order. Plaintiffs thereupon filed their alternative motion to set aside the dismissal, for a rehearing, and for leave to dismiss without prejudice. The court overruled that motion on January 29, 1971, and plaintiffs appealed.

Plaintiffs' notice of appeal specified that their appeal was taken from the court's order of January 29, 1971, that is, the order overruling the plaintiffs' foregoing alternative motion. As defendants correctly point out, an order overruling a motion for a new trial or one for similar post-hearing relief is not an appealable order. However, it is the spirit of our code to sustain an appeal which is actually an attempt in good faith to appeal from a final judgment. Woods v. Cantrell, 356 Mo. 194, 201 S.W.2d 311, and we therefore deny defendants' request that we dismiss the appeal. Walker v. Thompson, Mo., 338 S.W.2d 114.

In their amended petition plaintiffs alleged that defendant Hilleary Franchise Systems, Inc., was a Missouri corporation, with offices in St. Louis County, and was engaged in the restaurant business for profit; that Harry L. Hilleary, Frederick Hernon, Russell A. Spengel, Adam Aronson, John C. Cahil, Donald S. Hilleary and Paul Brackman, at various times were directors of that corporation; that at various times the defendant corporation, acting through its agents, servants and employees, "entered into and sold to plaintiffs various investments which were known as limited partnership certificates"; that at all times mentioned in the petition Section 409.010 through Section 409.418 of the Revised Statutes of Missouri (V.A.M.S.), which regulated the sale of various securities, were in full force and effect; "That the certificates of limited partnership sold and issued by the defendant corporation to the plaintiffs were securities within the meaning of said aforementioned Missouri Statutes"; that the defendant corporation failed to register said securities as required by that statute; that Section 409.411 makes all of said transactions voidable at the election of the purchasers, and that in compliance with that statute the plaintiffs did within two years of the issuance and sale of said security demand of the defendant corporation a return of the money paid for said security "but that said individual defendant has failed and refused to return these funds to the plaintiffs despite the fact that plaintiffs have tendered said securities to * * *" the defendant corporation; and that by virtue of Section 409.411 the named individual defendants, being directors of the defendant corporation at various times when said securities were issued, are personally liable to return said funds to plaintiffs but have failed and refused to do so. Plaintiffs' prayer was for judgment against the individual defendants in the sum of $13,500.00, for interest of 6% from January 1, 1969, for a reasonable attorneys fee, for its costs, and for such other and further relief as to the court may seem just.

Two of the individual defendants, Paul Brackman and Adam Aronson, filed separate motions to dismiss Count II of plaintiffs' petition for the reason that said

Count failed to state a claim upon which relief can be granted.

■ Thereafter the plaintiffs filed as an exhibit to their petition a copy of a document titled "Certificate of Limited Partnership." By so doing the plaintiffs made the Certificate a part of their petition for all purposes, and it must be considered in passing upon the sufficiency of the petition, the decisive issue here presented. Civil Rule 55.14, V.A.M.R.; Commonwealth Ins. Agency, Inc. v. Arnold, Mo., 389 S.W.2d 803; Crouch v. Tourtelot, Mo., 350 S.W.2d 799; Travelers Indemnity Co. v. Chumbley, Mo.App., 394 S.W.2d 418. Because of the relative importance the Certificate plays in resolving that issue we deem it necessary to set forth the Certificate in its entirety.

### "CERTIFICATE OF LIMITED PARTNERSHIP

"THIS CERTIFICATE is made this 28th day of November, 1969 by and between HILLEARY FRANCHISE SYSTEMS, INC., a Missouri corporation with its principal place of business at 11715 Administration Dr., St. Louis, Mo. 63141, hereinafter called the 'General Partner', and the other persons named in paragraph 3 hereof collectively called the 'Limited Partners'.

"1. *Name, Business, and Location.* The parties hereto hereby form a limited partnership pursuant to the Uniform Limited Partnership Law of Missouri under the name of John Henry's of Clearwater, Florida to operate a general restaurant and cocktail lounge under the provisions of a John Henry's Franchise Agreement. The Franchise Agreement shall be entered into by and between Hilleary Franchise Systems, Inc., as Franchisor, and the Partnership, as Franchisee, under the name of John Henry's of Clearwater, Florida. The principal place of the business shall be in Clearwater Florida.

"2. *Term.* The Partnership shall begin on November 28, 1969 and shall continue until the Partnership is terminated as follows:

(I) By mutual consent of all of the partners; or

(II) By the expiration of the term of the John Henry's franchise agreement including any extension thereof which for this John Henry's will be 20 years from the date the John Henry's restaurant established by the franchisee commences business plus the 3 five year options if exercised.

"3. *Capital and Profit Sharing.* The persons comprising this Limited Partnership, and their respective shares of the profits are as set forth on Exhibit I, which is attached hereto, and is a part hereof. Each of the partners shall contribute to the capital of the Partnership in cash the amounts shown on Exhibit I. The net profits of the Partnership shall be divided among the partners, in the proportions set opposite their respective names on Exhibit I.

"4. *Management.* No Limited Partner shall have any responsibility for, nor participate in, the conduct, control or management of the business or affairs of the Partnership, except as an employee of the Partnership. The responsibility for the conduct, control and management of the business affairs of the Partnership shall be borne by the General Partner exclusively. In this connection, the General Partner is hereby authorized and directed to execute with itself a John Henry's Franchise Agreement for and on behalf of the Partnership and to deliver to itself such Franchise Agreement and such other instruments, documents and certificates and to take such other and further action as the General Partner deems necessary or desirable in order to carry out the Partnership's obligations thereunder and to carry out the Partnership's business purpose.

"In addition to its other duties and obligations hereunder, the General Partner shall (a) install and activate in the said restaurant and cocktail lounge the system, methods and procedures peculiar to and now used in operating John Henry's Restaurants, (b) train and supervise key person-

nel for the said restaurant and cocktail lounge, (c) obtain sketches, elevations, floor plans and equipment layout for the said restaurant and cocktail lounge, and (d) select a full time on-the-premises manager whose compensation will be paid by the Partnership. The General Partner shall receive no fee for its management services; in lieu of such management fee the general partner shall receive the royalty provided in the Franchise Agreement payable to the General Partner monthly, which shall be three per cent (3%) of the total dollar amount of gross sales. The term 'gross sales' shall include the selling price of all merchandise of any sort whatsoever sold in, upon or from any part of the said restaurant and cocktail lounge or otherwise, exclusive of sales taxes imposed by any governmental agency or authority.

"The General Partner is specifically authorized and empowered, for and on behalf of the Partnership, to deal with itself in all matters relating to the organization, establishment, operation and management of the Partnership business. The General Partner is at present and in the future may engage in any other business ventures of any nature or description, independently or with others, including, but not limited to the general restaurant and cocktail lounge business. The Partnership shall have no responsibility to pay losses, if any, of such other businesses, nor shall the Partnership receive any share of the profits, if any, of such other businesses.

"5. *Payments to General Partner.* The General Partner is authorized to pay to itself (a) a franchise fee for the purchase of the franchise and royalties set forth pursuant to the Franchise Agreement, (see paragraph 4 above) (b) all expenses and costs it incurs for and on behalf of the Partnership (c) interest at the rate of 6.0% on all funds advanced or loaned to the Partnership and (d) any other and all expenses, costs, out-of-pocket expenses, advances and monies loaned by the General Partner to, for, or on behalf of the Partnership.

"6. *Banking.* All funds of the Partnership shall be deposited in such name or names and in such checking account or accounts as shall be designated by the General Partner, and may be commingled in a joint account with funds of other businesses operated by the General Partner; provided, however, that complete and separate records shall be maintained of the Partnership funds.

"7. *Books and Financial Statements.* The Partnership books shall be maintained at the principal office of the General Partner. Each partner shall at all reasonable times have access thereto. The books shall be kept on a fiscal year basis, determined by the General Partner, and shall be closed and balanced at the end of each fiscal year. Within a reasonable time after the end of each fiscal year, the General Partner shall cause financial statements for such year to be sent to each partner of the Partnership. Summary quarterly reports setting forth the sales and profits (or losses) of the Partnership shall be prepared and sent to all partners.

"8. *Assignment and Substitution.* (a) Except by operation of law, no Limited Partner shall have the right to assign his interest in the Partnership without the prior written consent of the General Partner.

"(b) The General Partner shall have the right to assign any part, but not the whole, of his interest in the Partnership without notice to the Limited Partners. Any such assignee of the General Partner may, at discretion of the General Partner, be substituted as a Limited Partner with respect to the interest assigned.

"9. *Liquidation.* In the event of the termination of the Partnership, there shall be a liquidation of the assets thereof. The proceeds of liquidation shall be distributed, as realized, in payment of liabilities of the Partnership in the following order: (a) to creditors of the Partnership; (b) to Limited Partners in respect to their contributions to the capital of the Partnership; (c)

to all partners in respect to their share of profits.

"10. *No Liability of Limited Partners.* The Limited Partners shall at no time be liable for any obligations of the Partnership in excess of their contributions to the capital of the Partnership.

"11. *Applicable Law.* This partnership is formed under the laws of the State of Missouri, and shall be governed thereby.

"12. *Counterparts.* This Certificate may be executed in one or more counterpart originals, no one of which need bear the signatures of all the parties hereto.

"IN WITNESS WHEREOF, the parties have signed and sealed this Agreement. (Corporate Seal)

General Partner

"HILLEARY FRANCHISE SYSTEMS, INC.

By /s/ Harry L. Hilleary

President"

"STATE OF MISSOURI COUNTY OF ST. LOUIS } SS:

"On this, the 6th day of January, 1970, before me, the undersigned officer, personally appeared, /s/ Harry L. Hilleary , to me personally known, who, being by me duly sworn did say: that he is the President of Hilleary Franchise Systems, Inc. a Missouri corporation, and that the seal affixed to the foregoing instrument is the corporate seal of said corporation; that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and that all statements and matters therein contained are true.

"IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

/s/ Marie Jo Cockrell
Notary Public

"My commission expires: Nov. 24, 1973

Limited Partner:

X _____
John C. Garbo

X _____
Rachel R. Garbo

_____ "

"STATE OF } SS:

"On this ____ day of _____, 19__, before me the undersigned officer, personally appeared:

_____

known to me to be the person(s) whose name (s) are subscribed to the within Certificate, acknowledged that they executed the same for the purposes therein contained, and swore to the truth of all statements and matters therein contained.

"IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public"

"My Commission expires:

"EXHIBIT I

To

"CERTIFICATE OF LIMITED PARTNERSHIP

| "Name and Residence of Member | Capital Contribution | Share of Profits |
|---|---|---|
| "General Partner:<br>Hilleary Franchise Systems, Inc.<br>11715 Administration Dr.<br>St. Louis, Missouri 63141 | $1.00 | |
| "John C. Garbo and<br>Rachel R. Garbo (JTCWROS)<br>9124 Leenora Avenue<br>St. Johns, Missouri 63114" | $10,000 | 5.76% |

The issue of whether plaintiffs' petition states a claim upon which relief can be granted depends upon whether the petition shows that the defendant corporation sold an unregistered security to the plaintiffs in violation of § 409.301. For that section of the Missouri Uniform Securities Act states that, "It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 409.402." The word "security" is defined in Section 409.401(*l*) as follows:

"(*l*) 'Security' means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting-trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or any contract or bond for the sale of any interest in real estate on deferred payments or on installment plans when such real estate is not situated in this state or in any state adjoining this state; or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. 'Security' does not include any insurance or endowment policy or annuity contract under which an insurance company promises to pay money either in a lump sum or periodically for life or for some other specified period."

The definition of the word "security" is similar to the Securities Act of 1933, 15 U.S.C.A. § 77b, and both contain the phrase "certificate of interest or participation in any profit-sharing agreement," and the term "investment contract." In the landmark case of Securities & Exchange Commission v. W. J. Howey Co. et al., 328 U.S. 293, 298, 66 S.Ct. 1100, 1102, 90 L.Ed. 1244, the court observed that while those terms were not defined in the Securities Act they had appeared in many state blue sky laws and had been broadly construed by state courts so as to afford the investing public a full measure of protection. The court said that, " * * * An investment contract thus came to mean a contract or scheme for 'the placing of capital or laying out of money in a way intended to secure income or profit from its employment.' * * *" Subsequently, in rejecting the suggestion of the Circuit Court of Appeals that an investment contract was necessarily missing where the enterprise was not speculative or promotional and where the tangible interest sold had intrinsic value independent of the success of the enterprise as a whole, the Supreme Court (1. c. 301, 66 S.C. 1. c. 1104) formulated its own test as to what constituted an investment contract: " * * * The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others. * * *"

If that test is applied literally then it is obvious that the contribution made by a limited partner " * * * involves an investment of money (by him) in a common enterprise with profits to come solely from the efforts of others," the general partner or partners. Our Limited Partnership Law, Ch. 359, closely follows the uniform act of that name. 6 Uniform Laws Annotated, p. 562, et seq. As the Commissioners pointed out in the official comment to the act, "The business reason for the adoption of acts making provisions for limited or special partners is that men in business often desire to secure capital from others. * * *" Thus the salient features of a limited partnership as provided by our Law are that; (1) a limited partner must contribute a stated amount to the partnership; (2) the limited partner may not take any part in the control of the business; (3) the limited partner does not become liable to creditors of the partnership for more than his original contribution; and (4) the limited partner is

entitled to that share of the profits stipulated in the certificate of limited partnership. It is obvious, therefore, that whatever profits will inure to a limited partnership must necessarily accrue to him " * * solely from the efforts of others."

In Gales v. Weldon, Mo., 282 S.W.2d 522, 527, when plaintiff sought to rescind a sale of a fractional working interest in an oil lease allegedly made in violation of our Missouri Securities Law, the defendants asserted that the parties had entered into a joint adventure and that the transaction was therefore exempt from the provisions of that act. However, the Supreme Court concluded that under the facts of that case " * * * plaintiff was not a party to a joint adventure or partnership and hence we need not determine whether 'The Missouri Securities Law' would apply to investments in such a relationship. * * *" A similar defense was raised in Cross v. Pasley, 270 F.2d 88, 92 (8 Cir.) and that court likewise ruled that the parties had not engaged in a joint adventure, but it added (perhaps unnecessarily): "Because of the very nature of a joint adventure, and the relationship of the parties engaged therein, we are inclined to the view that the Missouri statute (the Missouri Uniform Securities Law) is not designed or intended to cover transactions between joint adventurers or partners." Neither the research of able counsel, nor our own, has disclosed any other Missouri decision involving the question of whether our present Missouri Uniform Securities Act applies to either a general or a limited partnership.

█ The defendants vigorously assert that the Missouri Uniform Securities Act does not apply to the formation of limited partnerships or to the making of a certificate of partnership. We are inclined to agree that it does not apply to the formation of a true limited partnership or to the execution of a bona fide certificate of limited partnership as provided in § 359.020. For example, could it reasonably be contended that the Missouri Uniform Securities Act is applicable to a limited partnership formed between an able, experienced but impoverished automobile mechanic who desires to start his own repair shop, and a wealthy individual who is willing as a limited partner to contribute to the partnership the funds necessary to start the business, to permit the mechanic as the general partner to have exclusive control over the operation of the enterprise, and to take a stated share of the profits, if any, provided that his liability was limited to the amount of his original contribution? We think not. Among other reasons, under the facts hypothesized there would be no sale of any security; and the formation of such a true limited partnership would be exempt from the Act as an " * * * isolated non-issuer transaction, * * *" under § 409.402(b)(1). Courts of last resort in other states have so held. Hanneman v. Gratz, 170 Minn. 38, 211 N.W. 961; Lindemulder v. Shoup, 258 Mich. 679, 242 N.W. 807; Brown v. Cole, 155 Texas 624, 291 S.W.2d 704.

Contrast that factual situation, however, with one outlined in plaintiffs' brief: John Smith, the owner of an established business in Missouri, desires to expand its operation to other states. To that end he forms a corporation named the J. S. Company, but instead of issuing and selling stock or similar securities he forms a limited partnership between the corporation, as the general partners, and a nominal limited partner, in each of the localities in which he seeks to do business, by the terms of which the corporation grants a franchise to the limited partnership as its contribution to the partnership, but retains the right to admit any number of additional limited partners to the partnership for unspecified amounts. The corporation then, by means of an advertising campaign in the various media, and by numerous salesmen, induces individuals in each locality to acquire certificates of limited partnership for various shares of the profits of the limited partnerships on the representation to them that exceedingly large profits will thereby inure to them. .

Under such a factual situation could it reasonably be contended that the certificates are not securities or that the transaction was not within the letter, as well as the spirit, of the Missouri Uniform Securities Act? Again, we think not. Obviously, such a situation " * * * involves an investment of money in a common enterprise with profits to come solely from the efforts of others. * * *" Howey, supra, 328 U.S. 1. c. 301, 66 S.Ct. 1. c. 1104. And for all practical purposes the transaction involves a "sale" of such certificates, for that word is defined in § 409.401(j) as including " * * * disposition of, a security or interest in a security for value."

It is recognized in Missouri, as well as generally, that the primary purpose of legislation similar to that of the Missouri Uniform Securities Act is that " * * of protecting the buyers of securities," State ex rel. Sanders v. Hartford Acc. & Ind. Co. of Hartford, Conn., 235 Mo.App. 729, 143 S.W.2d 483, 484; that the fulfillment of that statutory purpose " * * * embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits," Howey, supra, 328 U.S. 1. c. 299, 66 S.Ct. 1. c. 1103; Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564; that the reach of such acts " * * * does not stop with the obvious and commonplace. Novel, uncommon, or irregular devices, whatever they appear to be, are also reached if it be proved as matter of fact that they were widely offered or dealt in under terms or courses of dealing which established their character in commerce as 'investment contracts,' or as 'any interest or instrument commonly known as a 'security,'" Securities & Exchange Commission v. C. M. Joiner Leasing Corp., 320 U.S. 344, 351, 64 S.Ct. 120, 124, 88 L.Ed. 88; and, accordingly, that the courts will look to the substance and not merely to the surface form of the transaction, and will examine all of the circumstances surrounding it. 79 C.J.S. Securities pp. 943, 944; Securities & Exchange Commission v. Universal Service Association, 7 Cir., 106 F.2d 232, cert. den., 308 U.S. 622, 60 S.Ct. 378, 84 L.Ed. 519. Although decisions dealing with certificates of limited partnership are by no means numerous, it has been held, under varying facts, that such certificates come with the meaning of the word "securities" as defined in our Federal acts and state blue sky laws. Conroy v. Schultz, 80 N.J.Super. 443, 194 A.2d 20; Pawgan v. Silverstein, 265 F.Supp. 898 (D.C.N.Y.); State v. Whiteaker, 118 Or. 656, 247 P. 1077; Solomont v. Polk Development Co., 245 Cal.App.2d 488, 54 Cal.Rptr. 22; Curtis v. Johnson, 92 Ill.App. 2d 141, 234 N.E.2d 566.

The need to examine all of the circumstances surrounding the transaction in order to determine whether the instrument and the alleged disposition thereof falls within the scope of an Act undoubtedly explains why relatively few cases are to be found in which the courts have barred further inquiry by dismissing a petition for failure to state a claim upon which relief may be granted in an action of this nature. In the instant case, while their petition is no model of pleading, the plaintiffs did allege therein that the corporate defendant had sold to them investments "which were known as limited partnership certificates"; that such certificates were securities within the meaning of the Act; that the defendant corporation had failed to register such securities as required by the Act; that plaintiffs had demanded of the individual defendants the money plaintiffs paid for such securities in accordance with the Act; and that the individual defendants had failed and refused to pay. It has long been the rule that in determining whether or not a petition states a claim upon which relief may be granted the averments therein are to be given a liberal construction, and are to be accorded their reasonable and fair intendment. Myers v. City of Palmyra, Mo., 355 S. W.2d 17; Hall v. Smith, Mo., 355 S.W. 2d 52; City of Creve Coeur v. Creve Coeur Fire Protection Dist., Mo., 355 S.W.2d

857. Construing the petition liberally and favorably to plaintiffs, as we must on a motion to dismiss, Hall v. Smith, supra, we are of the opinion that the reasonable and fair intendment of the petition was to charge that while the instruments sold by the defendant corporation to plaintiffs were ostensibly certificates of participation in a purported limited partnership, they were in truth and in law unregistered securities within the applicability of the Missouri Uniform Act.

Support for that conclusion is found in various provisions which deviate from those which might normally be expected to be found in a true certificate of limited partnership. Section 359.020. For example, in the introductory paragraph it is stated that the certificate is made between the defendant corporation, as the general partner, and " * * * the other persons named in paragraph 3 hereof collectively called the 'Limited Partners.' " But no actual names of the limited partners are stated in paragraph 3. Instead it is stated therein that "The persons comprising this Limited Partnership, and their respective shares of the profits are as set forth on Exhibit I, which is attached hereto, and is a part hereof. * * *" Thus not until we examine the exhibit attached to the instrument can the plaintiffs' names be found listed as so-called limited partners.

Another example is to be found in the unusual provision regarding the division of whatever profits might accrue. The passage last quoted provides that the respective shares of the profits are as set forth on Exhibit I attached to the certificate. That exhibit, under the column headed "Share of Profits," lists the plaintiffs as being entitled to a 5.76% share, but does not list the defendant corporation, the general partner, as being entitled to any share of the profits. What is to become of the remaining 94.24% of the profits is not shown. Of course there may not be any profits, for the undisclosed terms of the John Henry's Franchise Agreement, which

the general partner is directed to execute with itself, may be so high that no profits to the purported limited partnership could ever result.

A third deviation is to be found in the provision that the general partner " * *. * shall have the right to assign any part, but not the whole, of his interest in the Partnership without notice to the Limited Partners. Any such assignee of the General Partner may, at discretion of the General Partner, be substituted as a Limited Partner with respect to the interest assigned." Inasmuch as the instrument does not provide that any share of the profits is to inure to the general partner, apparently the only interest which the general partner could assign would be an interest in the royalty provided in the franchise agreement.

Lastly, while it is stated in paragraph 2 of the instrument that the purported partnership shall begin as of November 28, 1969, we note that the acknowledgement by the president of the defendant corporation was not made before the notary public until January 6, 1970. The discrepancy in the dates as well as the other matters referred to, would indicate that the purported limited partnership was not formed between the defendant corporation and the plaintiffs as the original parties, but rather that the plaintiffs were ostensibly being admitted subsequent to its formation, all of which would tend to support their claim that they were sold a security within the meaning of that word as used in the act.

■ In short, we are of the opinion that the plaintiffs' petition, together with the exhibit attached thereto and made a part thereof, states at least a prima facie claim upon which relief can be granted and that the plaintiffs should be granted the right to a trial. Of course, if their evidence as to the facts and circumstances surrounding the formation of the limited partnership and the acquisition by plaintiffs of their certificates therein show that a bona fide limited partnership was formed, and that the project

was not a scheme devised to obtain the investment of plaintiffs in a manner calculated to evade the safeguards afforded to them and to the investing public by the Act, the trial court can, and should, deny relief to the plaintiffs.

One other point remains to be covered. Defendants argue that if registration of the certificate of limited partnership was required by the Act it was incumbent upon the plaintiffs, as well as the defendant corporation, to have registered the certificate, and that the plaintiffs are therefore in no position to maintain this action based on the nonregistration of the certificate. Section 409.411(f) of the Act provides that "No person who has made or engaged in the performance of any contract in violation of any provision of this act or any rule or order hereunder, or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any suit on the contract." If that provision can be construed as a defense in the nature of an estoppel because the plaintiffs were in pari delicto with the defendant corporation, see Covert v. Cross, Mo., 331 S.W.2d 576, it would be necessary to both plead and prove the element of knowledge on the part of the plaintiffs of the illegality of the transaction. Gales v. Weldon, Mo., 282 S.W.2d 522. And that procedure, of course, presupposes a plea and a trial.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment reversed and cause remanded for further proceedings consistent with opinion.

BRADY, C. J., and DOWD, SMITH, SIMEONE and WEIER, JJ., concur.