No. 58,181

BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, KANSAS,
*Appellant,* v. J. A. PETERSON COMPANY, *Appellee.*

(716 P.2d 188)

Opinion filed March 28, 1986.

*Bruce F. Landeck,* assistant county counselor, argued the cause and *Philip S. Harness,* county counselor, was with him on the brief for appellant.

*John Ivan,* of Shawnee Mission, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: The Board of County Commissioners of Johnson County (Board) has appealed from an order of the district court which affirmed an order of the state board of tax appeals (BOTA) granting certain ad valorem tax relief to the property owner J. A. Peterson Company (JAP).

The facts are essentially undisputed. JAP, as owner of the Tomahawk Shopping Center and three apartment complexes known as Fox Run I and II Apartments, Thousand Oaks Apartments, and Kings Cove Apartments, objected to the ad valorem tax valuations placed upon its properties and the resultant taxes for the years 1976 through 1980. The proceedings before the BOTA, which included appeals from the Johnson County Board of Equalization and direct protests, were consolidated for hearing. The Johnson County Board of Equalization had affirmed the property appraisals of the county appraiser, leading to the appeals and protests by JAP. The BOTA granted an 8% reduction in the appraisal values of the three apartment complexes based upon the functional obsolescence of their total energy plants and a 10% reduction in the shopping center appraisal value based upon a "location adjustment" or location depreciation due to the poor geographic location and accessibility of the center. Upon appeal to the district court, the order of the BOTA was upheld in

its entirety, leading to this appeal by the Board. Although JAP had sought larger reductions on all the properties, it did not cross-appeal from the district court decision.

In its order on rehearing, the BOTA explained the basis of its decision:

"The County contends that the Board's order granting additional functional obsolescence reductions because of the 'Total Energy Plants' is excessive since the taxpayer still uses these plants for air conditioning and heating and are therefore not 'totally obsolescent.' This contention is based on a premise that this Board found these plants to be 'totally obsolescent.' The Board never made such a finding. The Board found that these plants no longer *generate electricity* for the apartments. The Board never made a finding that these plants do not still provide air conditioning and heating for these apartments and the 8% functional obsolescence arrived at by the Board is allowance only for the loss of function of the plants for electrical generation purposes. The County also contends that functional obsolescence represents an 'excessive credit' to taxpayer since 'taxpayer has never been charged for nor paid any ad valorem taxes relative to' the Total Energy Plants. No evidence in support of this contention is presented to this Board and none was presented at the hearing in this matter. In fact the Property Assessment Record Cards for these properties clearly show a valuation for the plants (for example, the Fox Run Apartments shows an Adjusted 100% Value of $31,800 for the 'powerhouse, cooling tower' and described structures.) This value appears to have been placed on the structure in 1971 (the year of its completion) and appears to have remained unchanged since that date. There is no notation on the card to demonstrate that less than a complete appraisal of the plant was made at the original appraisal and this Board must presume that the original appraisal was a complete appraisal of the property, absent clear evidence to the contrary. The cessation of electrical generation capabilities of these plants did not occur until 1975.

"Finally, the County contends that the 'location adjustment' granted by this Board with respect to the Tomahawk Shopping Center is not 'consistent with the definition of location depreciation recognized' by the Director of Property Valuation Division. Again no evidence is presented to this Board in support of that contention and none was presented at the hearing in this matter. Therefore the Board is not entirely certain what the County's contention in this regard is based on. However, generally recognized principles of appraising support the Board's conclusions in this regard. A 'location adjustment' is nothing more than an allowance for economic obsolescence, which is nothing more than a form of depreciation which is caused by changes external to the property. It is generally recognized that the best measure of this form of depreciation is a capitalized value of the rental loss due to the economic obsolescence. See, *e.g.* American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 217 (Fifth Ed. 1967). It is also generally accepted that the vacancy rate in commercial property and the accessibility of the property (to both automobile and pedestrian traffic) are valid considerations in arriving at the conclusion that economic obsolescence exists and as factors to be considered in valuing the property.

"In conclusion, the Board finds that the Motion for Rehearing in this matter

states no new evidence or presents no legal argument[s] which have not already been presented to this Board and which were considered by this Board in arriving at its decision in this matter."

The scope of review in an appeal from a decision of an administrative agency has been stated many times. In *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, Syl. ¶¶ 1 and 2, 436 P.2d 828 (1968), this court held:

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.

"In reviewing a district court's judgment, as above, this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court."

Decisions of the BOTA are subject to the same limited judicial review as are decisions of other administrative tribunals. *T-Bone Feeders, Inc. v. Martin,* 236 Kan. 641, 645, 693 P.2d 1187 (1985). We have often stated the rule that issues not presented to the trial court will not be considered for the first time on appeal. *Lostutter v. Estate of Larkin,* 235 Kan. 154, Syl. ¶ 6, 679 P.2d 181 (1984). The only issue presented in the Board's brief which is properly before this court for review is whether the BOTA and district court decisions, allowing for functional obsolescence and location adjustments, are arbitrary, capricious, unreasonable or unsupported by substantial competent evidence. Both parties presented expert testimony in support of their relative positions.

The district court in a well-reasoned memorandum decision stated:

"I. THE BOARD OF TAX APPEALS DID NOT ERR IN ALLOWING J. A. PETERSON AN EIGHT PERCENT FUNCTIONAL OBSOLESCENCE ALLOWANCE.

"There is no evidence in the record that BOTA acted arbitrarily, capriciously or fraudulently. BOTA acted within the scope of its authority. Indeed, K.S.A. 79-1409 gives BOTA, acting as the state Board of Equalization, the duty to 'equalize the valuation and assessment of property throughout this state.' This statutory duty enables BOTA to depreciate property in determining its fair market value under K.S.A. 79-503 so that a uniform and equal rate of assessment and taxation may be maintained.

"Testimony indicated that there are only seven apartment complexes in Johnson County that have the Total Energy Plant, thus making the apartments

that have this feature unique. There was also testimony regarding the costliness of the Total Energy Plant. In such a system, the apartment complex purchases natural gas, which is used to power a generator that creates electricity for the complex. The system was effective when natural gas was much less expensive than electricity. When natural gas prices increased, it was no longer cost-effective to maintain the Total Energy Plant.

"The system requires a full-time engineer to maintain and is expensive to convert because of the cost of installing separate electric meters. As a result, electricity must be provided to the entire apartment project. Most other apartment projects contain individual meters, so that the utilities are paid by the tenants. Because of the increased expense and service problems, most Total Energy Plants have been phased out. See BOTA Transcript at 191-92. The Board's finding is therefore supported by substantial evidence. As such, BOTA's conclusion that an 8% depreciation should be allowed functional obsolescence was reasonable.

"II. THE BOARD OF TAX APPEALS DID NOT ERR IN ALLOWING TAXPAYER A 10% LOCATION ADJUSTMENT FOR TOMAHAWK HILLS SHOPPING CENTER.

"No evidence in the record suggests that BOTA acted in an arbitrary, capricious or fraudulent manner. BOTA's finding was within the scope of its authority.

"An appraiser for JAP, Albert V. Margolin, testified that the shopping center is called a neighborhood or strip shopping center. It is improved with four store buildings tied together to make an open V shopping center. Transcript at 433. The four buildings have a total of 63,600 square feet.

"Testimony indicated that because of its location so far from the road, Tomahawk Hills is difficult to spot. '[T]he nature of the terrain was such that when you are driving up Seventy-Fifth Street, the shopping center itself is almost hidden. You don't realize it is there unless you are looking for it, and know it is there to look for . . . .' Id. at 440-41. This difficulty is compounded by satellite buildings along the front of the project, which makes Tomahawk Hills Shopping Center even more difficult to see.

"There was also testimony as to the unique layout of the shopping center: " 'people parking to go to the stores, other than A&P, except for a row of cars right up next to the building, have a fairly good distance away to walk, and it should have been laid out as an L-shaped center, so you could park in the center of the L. They have a broadbase V, and if you want to go from the A&P clear to the other side, you have to get in your car and drive, unless you are willing to take a good long hike. And it has been my experience . . . that once people leave the grocery store and get in their car, they can drive to another area, they can drive to another center. They don't have to stay there to shop. So the tenants lose business by virtue of the design of this.' Id. at 441.

"Further, because of its location, Tomahawk Hills leases to 'unusual type businesses,' the type of tenants that shopping centers basically don't like. Id. at 446. Also, there is a high turnover rate among these tenants.

"This Court is not permitted to try the case *de novo*, and substitute its judgment for BOTA's, even though a different result may have been reached. Looking at the record as a whole, there is evidence that possesses relevance and

furnishes a substantial basis of fact from which the location depreciation issue could be reasonably resolved. Substantial evidence supports BOTA's finding."

The court went on to hold that the BOTA had not committed error in its adjustment of the appraisal valuations of the shopping center and the three apartment complexes. We agree.

The judgment is affirmed.