(780 P.2d 1126)
No. 63,360█

537721 ONTARIO, INC., A Canadian Corporation d/b/a Canadian Express Club, and GEORGE YEMEC, *Appellants*, v. M. DOUGLAS MAYS, Securities Commissioner of the State of Kansas, *Appellee*.

Opinion filed July 28, 1989.

*Stephen W. Cavanaugh*, of Fisher, Heck & Cavanaugh, P.A., of Topeka, for appellant.

*Roger N. Walter*, of Office of the Securities Commissioner of Kansas, of Topeka, for appellee.

Before ABBOTT, C.J., BRAZIL, J., and RICHARD W. WAHL, District Judge Retired, assigned.

BRAZIL, J.: Canadian Express Club appeals from a district court order affirming an administrative decision by the Kansas Securities Commissioner that Canadian Express Club was selling securities within the definition of K.S.A. 17-1252(j). We affirm.

Canadian Express Club is a corporation which solicits buyers to purchase shares in the Lotto 6/49 6000 group. The 6000 group is comprised of 250 shareholders whose money is pooled to purchase 6,000 Canadian lottery tickets over a six-week period. Total winnings from the tickets are split among the shareholders. Canadian Express Club guarantees that if the 6000 group does not receive some return within the six-week period, it will provide the group with 6,000 additional tickets and continue the group for six additional weeks.

K.S.A. 17-1269 instructs that review of a final order of the

Securities Commissioner should be taken in accordance with the act for judicial review and civil enforcement of agency actions. On review, the district court may find the agency action is invalid if the agency erroneously interpreted or applied the law. K.S.A. 77-621(c)(4). This court should make the same review of the Commissioner's action as does the district court. See *Board of Johnson County Comm'rs v. J. A. Peterson Co.*, 239 Kan. 112, 114, 716 P.2d 188 (1986).

The issue before this court is whether shares in the 6000 group constitute securities. K.S.A. 17-1252(j) provides a number of definitions of security, including any investment contract. The test to determine whether a financial relationship constitutes an investment contract was set out by the Supreme Court in *S.E.C. v. Howey Co.*, 328 U.S. 293, 301, 90 L. Ed. 1244, 66 S.Ct. 1100 (1946), and adopted by the Kansas court in *State ex rel. Owens v. Colby*, 231 Kan. 498, 504, 646 P.2d 1071 (1982), where the court said that the test is "whether the contractual arrangement involves an investment of money in a common enterprise with profits to come from the efforts of others." In *Activator Supply Co. v. Wurth*, 239 Kan. 610, 722 P.2d 1081 (1986), the court reviewed the principles of law set forth in *Colby* and noted: "[T]he *Colby* test requires four essential elements: (1) An investment of money (2) A common enterprise (3) An expectation of future profits (4) From the efforts of others." 239 Kan. at 617. This court must determine whether the facts surrounding the 6000 group support a finding that an investment contract exists. In *Colby* the court said:

"The Kansas Securities Act is patterned after the Uniform Securities Act which is itself a copy of the Federal Securities Act of 1933. As a part of the web of the Uniform Acts throughout the nation and because of the common history and theories behind both the state and federal experience in the field of securities regulation, the Kansas Act should be developed by court decisions which are firmly grounded on prior state decisions and upon prior decisions of the federal courts, and the courts of our sister states." 231 Kan. at 501.

The first element of the investment contract test is an investment of money. In *Wurth*, the court adopted the federal securities act definition of investment of money. The term means "only that the investor must commit his assets to the enterprise in such a manner as to subject himself to financial loss. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1978)." 239 Kan. at 617. In *S.E.C. v. Energy Group of America, Inc.*, 459 F. Supp. 1234, 1239

(S.D.N.Y. 1978), the court said, "An 'investment' typically involves parting with money for the purpose and in the reasonable expectation of making a profit."

Canadian Express Club argues that paying to play the lottery is the equivalent of paying a fee and that neither transaction is an investment of money. Canadian Express Club relies on *Energy Group of America,* in which the court held that payment of a ten-dollar fee did not constitute an investment of money. 459 F. Supp. at 1239. That case focuses on the services provided by Energy Group of America (EGA) with regard to oil and gas lease lotteries conducted by the Bureau of Land Management (BLM). BLM awarded ten-year leases through a public drawing in which the winner of the lease must pay the first year's rent in advance and thereafter pay annual rent. In return for a ten-dollar fee, EGA provided customers with a monthly listing of parcels of land expected to be subject to the BLM drawing, recommendations upon which parcels to bid, the submission of an entry card for the customer, and readiness to purchase the lease from the winner. 459 F. Supp. at 1237. In holding that the fee payment did not constitute investment of money, the court said, "Customers of EGA do not contribute capital to any enterprise with the intention of sharing in its profits and earnings—they merely pay a fee for which certain services are provided in return." 459 F. Supp. at 1240.

In contrast, the shareholders of the 6000 group invest with hopes of making a profit on their investment. By investing, the participants subject themselves to the possibility of financial gains or losses. It is significant that Canadian Express Club's advertising brochure consistently stresses the large dollar amounts which may be won and the likelihood of recovering some profit every six weeks. See *Securities & Exch. Com'n v. Brigadoon Scotch Dist., Ltd.,* 388 F. Supp. 1288 (S.D.N.Y. 1975) (Advertising brochure, describing rare coins as an investment and comparing gains in stock market with returns from coins, used as evidence that coins were purchased for investment, not coin collecting.). The 6000 group shareholders are making an investment of money.

The second element of an investment contract is a common enterprise. A distinction has been made between horizontal commonality and vertical commonality. Horizontal commonality

requires joint participation by all investors in the same investment enterprise. It requires that the investors provide capital and share in the earnings and profits. See *Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96, 100-01 (7th Cir. 1977). Vertical commonality requires that the fortunes of all investors be inextricably tied to the efforts of the promoters. *Brigadoon Scotch Dist., Ltd.*, 388 F. Supp. at 1291.

It is unclear what type of commonality is required in Kansas. In *Wurth*, the court said, "A common enterprise is one in which the fortunes of the investor are interwoven with and dependent on the efforts and success of those seeking the investment or of third parties." 239 Kan. 610, Syl. ¶ 7. This language seems to indicate that a finding of either horizontal or vertical commonality satisfies the common enterprise requirement. However, later in the opinion the court states:

"A major case defining 'common enterprises' is *Securities & Exch. Com. v. Koscot Inter., Inc.*, 497 F.2d 473 (5th Cir. 1974), which relied on *Securities & Exchange Com'n v. Glenn W. Turner Ent., Inc.*, 474 F.2d 476 (9th Cir. 1973), and held that a pyramid selling scheme involving sales of distributorships satisfied the 'common enterprise' element of the definition of an investment contract. The court in *Koscot* defined a common enterprise as one in which the 'fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties.' 497 F.2d at 478. Further, the court stated that the fact that the investor's return is independent of that of other investors in the scheme (sometimes referred to as horizontal commonality) is not decisive. Rather, the requisite commonality is evidenced by the fact that the fortunes of *all* investors are inextricably tied to the efficacy of the promoters. 497 F.2d at 479. This is referred to as vertical commonality." 239 Kan. at 618.

This language may be interpreted as requiring vertical commonality in Kansas.

Clearly, horizontal commonality exists in this case. The investors in the 6000 group pool their money and share in the profits. Vertical commonality is also present. The Canadian Express Club purchases the lottery tickets for the shareholders and does all the paperwork and bookkeeping. In addition, the Canadian Express Club recruits investors to insure the success of the pool for all the shareholders. Although the Canadian Express Club has no influence over the actual lottery, it does provide a way for the investors to play the lottery on a grand scale with increased odds of winning. The effectiveness of the Canadian Express Club in purchasing the tickets, bookkeeping, and recruiting participants is tied to the fortunes of the investors.

The third requirement of an investment contract is an expectation of future profits. The Canadian Express Club advertising brochure includes enticements of a guaranteed win or free participation in the next 6000 group. The brochure mentions a $13,000,000 jackpot and lesser cash prizes of between $400,000 and $600,000. The 6000 group participants are clearly investing to play the lottery in hopes of receiving future profits.

The final requirement of an investment contract is that the future profits result from the efforts of others. The test applied in determining whether future profits come from the efforts of others "is whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." 239 Kan. at 620. The efforts of Canadian Express Club must affect the failure or success of the enterprise to satisfy the investment contract test.

Canadian Express Club argues the fourth element of the investment contract test is not satisfied because their efforts will not insure the success or failure of the 6000 group. They allege that the lottery is a game of chance in which the winning participants are dependent on the luck of the draw not the managerial or entrepreneurial efforts of Canadian Express Club.

Canadian Express Club compares the purchase of shares in the 6000 club to the purchase of gold coins or silver bars. In *S.E.C. v. Belmont Reid & Co. Inc.*, 794 F.2d 1388 (9th Cir. 1986), the court reviewed the sale of gold coins at a fixed price to investors under a sale-of-goods contract in which the investor prepaid for the coins. The court held that the transaction was not an investment contract because the profits did not come from the efforts of the seller but rather depended on the fluctuations of the gold market. Similarly, in *NOA v. Key Futures, Inc.*, 638 F.2d 77 (9th Cir. 1980), the court held that no investment contract was created when an investor purchased silver bars pursuant to a contract of purchase in which the seller agreed to repurchase the bars at any time for the price quoted in the Wall Street Journal. The court determined that the profits to the investor depended upon fluctuations of the silver market and not the managerial efforts of the seller.

Canadian Express Club also relies on *Energy Group of America*, 459 F. Supp. 1234, in which the court held that the

EGA did not provide significant efforts which affect the failure or success of the enterprise with the result that an investment contract did not exist. EGA made recommendations to customers regarding which oil and gas leases they should bid on and stood ready to purchase the lease from a customer for the price at which the lease is valued on the monthly listing. In holding that an investment contract was not formed, the court said:

"What primarily affects the failure or success of the enterprise, assuming there is one, is not EGA's 'essential managerial efforts,' . . . but the luck of the draw. The skill of EGA in selecting the recommended parcels has no effect whatsoever unless a customer wins a lease, an occurrence totally outside of EGA's control. Under the circumstances, EGA's role in the success of the enterprise, limited as it is to recommending parcels on which to bid, with the rest left to chance, can hardly be said to be essential managerial or entrepreneurial efforts." 459 F. Supp. at 1240.

These cases are distinguishable in that each buyer purchased an individual gold coin, silver bar, or oil and gas lease after which the enterprise had no further obligation with the exception of the obligation to repurchase the silver bar or oil and gas lease for the market value. In this case, a member of the 6000 group purchases a share in congruence with a number of other investors. The investors expect to receive earnings resulting from the use of their funds. The group of investors depend on Canadian Express Club to purchase 6,000 lottery tickets, keep daily records of the lottery numbers, send each investor a results summary of the group, and disburse any winnings to each investor. Although an element of luck is present, the investors could not participate in the lottery pool without the organization and management of Canadian Express Club.

Investment in the 6000 group may be compared with investment in a mutual fund, which is a security. See *Daniel v. Inter. Broth. of Tmstrs., Chauf., Etc.*, 561 F.2d 1223 (7th Cir. 1977) (A pension fund resembles a mutual fund, both of which are securities.). Mutual fund investors purchase shares in mutual funds with the knowledge that their money will be invested in stocks, bonds, and other investments. The investors anticipate a profit from their investment, but probably realize mutual funds are not risk-free. The fund manager handles the management and record keeping and sends the investors periodic reports with regard to their profits. Similarly, the 6000 club participants purchase shares with the knowledge that their money will be invested in

the lottery. The investors anticipate earning a profit but probably realize the lottery is a game of chance. The Canadian Express Club manages the purchase of the lottery tickets, provides record-keeping services, and sends investors their profits.

The profits from investment in the 6000 club come from the efforts of the Canadian Express Club. The elements of an investment contract are present. Accordingly, shares in the 6000 group constitute securities.

Affirmed.