(892 P.2d 906)
No. 71,490

THE MOST REVEREND IGNATIUS J. STRECKER, ARCHBISHOP FOR THE ARCHDIOCESE OF KANSAS CITY IN KANSAS, *Appellee*, v. J. MARK HIXON, SHAWNEE COUNTY APPRAISER, *Appellant*.

Opinion filed November 23, 1994.

*Sandra L. Jacquot*, county counselor, for appellant.

*John J. Jurcyk, Jr.*, and *Joseph W. Hemberger*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellee.

Before GREEN, P.J., GERNON and LEWIS, JJ.

GERNON, J.: J. Mark Hixon, Shawnee County Appraiser, (Appraiser) appeals a district court order which granted the Archbishop for the Catholic Archdiocese of Kansas City, Kansas, (Archbishop) a tax exemption for a 2.8-acre tract used as a soccer field. The Board of Tax Appeals (BOTA) had previously denied the exemption, but the district court reversed BOTA's decision and found that the property was used exclusively for an educational purpose and was, therefore, exempt from ad valorem taxation.

The Appraiser has conceded that the property has been used exclusively as a soccer field. Therefore, the only question before us is whether such a use is for an educational purpose.

The 2.8-acre soccer field is part of a larger 10.9-acre tract, the remainder of which, for the time period involved in this tax case, was planted with brome grass. The property was first used as a soccer field in 1990 when teams were barred from practicing at a city park due to excessive damage the practices were causing to the park field. Only teams from the Topeka Parochial League and the Topeka Sunflower League are allowed to practice on the field. A member of the parish whose church is adjacent to the field must either be a team member or coach in order for a team to use the field. However, there is no ·prohibition against anyone playing on the field when it is not in use by a scheduled team. The parish does not charge for the use of the field.

BOTA seemed to believe that the fact the soccer field was not associated with an educational institution was significant. At the time involved in this dispute, the church did not have a school as part of its facilities. However, except for the years directly involved in the case before us, the construction of a school on the site, which is now taking place, will render this matter moot.

The Archbishop requested the exemption pursuant to K.S.A. 1993 Supp. 79-201 *Second,* which exempts from ad valorem taxation "[a]ll real property, and all tangible personal property, actually and regularly used exclusively for literary, educational, scientific, religious, benevolent or charitable purposes, including property used exclusively for such purposes by more than one agency or organization for one or more of such exempt purposes."

This statute is drawn from Article 11, Section 1, of the Constitution of Kansas, which provides in part: "All property used exclusively for . . . educational . . . [and] religious . . . purposes . . . shall be exempted from property taxation."

BOTA denied the exemption, finding there was no evidence that the other teams allowed to use the soccer field were using it for educational purposes. The district court on appeal concluded that BOTA erroneously interpreted the law and reversed BOTA's decision. The district court determined that qualification

for an educational use exemption is not dependent upon the subject of the property being associated with a school and that physical training serves educational purposes.

This court must make the same review of the Board's action as did the district court. See *537721 Ontario, Inc. v. Mays*, 14 Kan. App. 2d 1, 2, 780 P.2d 1126, *rev. denied* 245 Kan. 785 (1989).

The question before us is whether the taxpayer's soccer field qualifies for the educational-use exemption from taxation pursuant to K.S.A. 1993 Supp. 79-201 *Second*.

A number of general rules applicable in this regard are found in *In re Tax Appeal of Derby Refining Co.*, 17 Kan. App. 2d 377, 380-81, 838 P.2d 354 (1992), *rev. denied* 252 Kan. 1092 (1993):

"In Kansas, taxation is the rule and exemption is the exception. *Assembly of God v. Sangster*, 178 Kan. 678, 680, 290 P.2d 1057 (1955). The burden of establishing an exemption from taxation is on the party claiming the exemption. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 454, 691 P.2d 1303 (1984). One who claims a tax exemption must bring himself clearly within the exemption provisions of the statute. *Warren v. Fink*, 146 Kan. 716, Syl. ¶ 1, 72 P.2d 968 (1937). Statutory exemption provisions are strictly construed against the party requesting exemption. *Farmers Co-op v. Kansas Bd. of Tax Appeals*, 236 Kan. 632, 635, 694 P.2d 462 (1985). All doubts concerning exemption are to be resolved against the exemption and in favor of taxation. *Trustees of The United Methodist Church v. Cogswell*, 205 Kan. 847, 851, 473 P.2d 1 (1970)."

Both BOTA and the district court based their decision in part on *National Collegiate Realty Corp. v. Board of Johnson County Comm'rs*, 236 Kan. 394, 690 P.2d 1366 (1984) [*National Collegiate*]. In that case, the National Collegiate Realty Corporation sought an exemption from ad valorem taxation pursuant to K.S.A. 1983 Supp. 79-201 *Second* (now K.S.A. 1993 Supp. 79-201 *Second*) for the national headquarters of the National Collegiate Athletic Association (NCAA) in Johnson County, Kansas. BOTA denied the exemption, concluding that the property was not being used exclusively for educational purposes. 236 Kan. at 395.

The Kansas Supreme Court reversed this ruling by BOTA, concluding that the activity conducted at the headquarters of the NCAA qualified as an exclusively educational use. 236 Kan. at

404-05. In so doing, the court endorsed a broad definition of "education" accepted by other courts and legal authorities. For example, the court cited with approval *Mtr. of Syracuse Univ.*, 59 Misc. 2d 684, 300 N.Y.S.2d 129 (1969), which defined " 'educational' " as "embracing mental, moral and physical education." 236 Kan. at 400. The court also cited *Albach v. Odle*, 531 F.2d 983 (10th Cir. 1976), which described education as follows:

" 'The educational process is a broad and comprehensive concept with a variable and indefinite meaning. It is not limited to classroom attendance but includes innumerable separate components, such as participation in athletic activity and membership in school clubs and social groups, which combine to provide an atmosphere of intellectual and moral advancement.' " 236 Kan. at 400.

The Kansas Supreme Court concluded that the various activities of the NCAA, including rule-making, publication and dissemination of information, investigation of recruiting violations and discipline thereof, and promoting championship events, were educational purposes within the meaning of 79-201 *Second.* 236 Kan. at 404-05.

It is clear, therefore, that affiliation with an educational institution is not a requirement for exemption under *National Collegiate.*

Other courts have defined educational purposes.

In *Boney v. Kinston Graded Schools*, 229 N.C. 136, 140, 48 S.E.2d 56 (1948), when the question of defining an educational purpose was partially at issue, the court there cited the concept of education expressed by the Montana Supreme Court as follows:

" 'By its voluntary act, the state has assumed the function of education primarily resting upon the parents, and by laws on compulsory education has decreed that the custody of children be yielded to the state during the major portion of their waking hours for five days a week, and, usually, nine months in the year. In doing so, the state is not actuated by motives of philanthropy or charity, but for the good of the state, and, for what it expends on education, it expects substantial returns in good citizenship. With this fact in mind, it is clear that the solemn mandate of the Constitution is not discharged by the mere training of the mind; mentality without physical well-being does not make for good citizenship—the good citizen, the man or woman who is of the greatest value to the state, is the one whose every faculty is developed and alert. Education may be particularly directed to either mental, moral, or physical powers or faculties, but in its broad-

est and best sense it embraces them all.' *McNair v. School District No. 1 of Cascade County*, 87 Mont. 423, [428,] 288 P. 188, 69 A.L.R. 866."

In *Burgoon et al. v. Z. H. Bd. of Charlestown T.*, 2 Pa. Commw. 238, 240, 277 A.2d 837 (1971), a Pennsylvania appellate court held that an equestrian center with the stated purpose of " 'instructing pupils in the techniques of horsemanship' " constituted a special exception for zoning purposes as an " 'educational use.' " The court stated: "In its 'broadest sense' the term 'educational use' in the . . . ordinance encompasses institutions which conduct moral, intellectual, *or* physical training. The court below erred in demanding specifically classified training in every phase of academic pursuit." 2 Pa. Commw. at 244-45.

Given the broad definition of "educational use" as stated by the Kansas Supreme Court in *National Collegiate* and in the courts of North Carolina and Pennsylvania as stated above, we conclude the "educational use" exception has been sufficiently met for the purposes of the statutes in the case before us.

Affirmed.

LEWIS, J., dissenting: The majority opinion concludes that the use of church property for the nonreligious, nonschool-related purpose of playing soccer makes that property tax exempt. Indeed, the majority concludes that this use is exclusively educational. I cannot agree with that concept and dissent from the majority opinion.

If practicing and playing soccer in a nonreligious, nonschool-related context qualifies as an "exclusively educational use," we have opened up the route to exemption to a large number of endeavors. This is youth soccer, but soccer is soccer, and under the majority opinion, use by an adult soccer league would also qualify. I see no reason why, under the majority opinion, property used exclusively for baseball, softball, basketball, etc., would not be equally exempt.

Our traditional view has been to declare use for sporting endeavors exempt when they are part of the regular or extracurricular activities of an institution devoted to education. This case involves an activity which is not part of the curriculum of any

school and is not related to or a part of any educational system. I believe the majority applies an overbroad definition of "exclusively used for educational purposes," and that is wrong.

BOTA determined that the property was not exclusively used for educational purposes, and I agree with its decision and its rationale. BOTA expressed concern that allowing the exemption would mean that "any entity holding land would be exempt by allowing organized athletic events to be held and alleging the participants were learning. Also, any homeowner could allow the local youth baseball team to practice on his property and claim exemption because the children were learning." I share those concerns.

The majority rests its decision on language found in *National Collegiate Realty Corp. v. Board of Johnson County Comm'rs*, 236 Kan. 394, 690 P.2d 1366 (1984). I believe their reliance is misplaced and based on an overbroad interpretation of that decision. The NCAA was created by the colleges and universities in this nation and exists to oversee intercollegiate athletics. It is part and parcel of our nation's system of higher education. The NCAA bears a direct relationship to our system of higher education. The playing of soccer on the Archbishop's vacant real estate has no relationship, real or imagined, to any educational entity in the state of Kansas.

There is nothing inherently "educational," as that term is used in Article 11 Section 1 of our constitution, in playing soccer on a vacant lot in Topeka.

I would adopt the rationale of BOTA and reverse the trial court.