STATE of Missouri, Respondent,

v.

Gregory S. REBER, Appellant.

Gregory S. REBER, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 20255, 21482.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 28, 1998.

William J. Fleischaker, Roberts, Fleischaker, Williams, Wilson & Powell, Joplin, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Douglas M. Ommen, Breck K. Burgess, Asst. Atty. Gens., Jefferson City, for Respondent.

MONTGOMERY, Judge.

On April 21, 1998, this Court issued an opinion in these consolidated appeals which (1) affirmed Defendant's convictions and (2) dismissed the appeal of the motion court's ruling on Defendant's Rule 29.15 motion on the basis that the order did not comply with Rule 74.01(a). On June 16, 1998, by order of the Missouri Supreme Court, these consolidated cases were transferred to that Court. On September 22, 1998, the Supreme Court issued an opinion deciding that the "order entered by the motion court is not subject to the requirements of Rule 74.01(a)." The Supreme Court then ordered the consolidated cases retransferred to this Court. The following original opinion of this Court relating

to appeal 20255 is now readopted and reissued. In appeal 21482, this Court addresses Defendant's claim that the motion court erroneously denied his Rule 29.15 motion without holding an evidentiary hearing.

A jury found Gregory S. Reber (Defendant) guilty of twelve counts of securities fraud, in violation of § 409.101.[1] Each count of the amended information generally alleged that Defendant employed a scheme or artifice to defraud investors regarding fictitious electrical contracting jobs, which Defendant had never obtained, and that Defendant made false statements to investors, thereby inducing them to invest in Defendant's business operation. The trial court entered judgment on the jury verdict and sentenced Defendant to a total of fifteen years' imprisonment. He brings appeal 20255 from that judgment.

Thereafter, Defendant filed a motion to vacate the judgment and sentence pursuant to Rule 29.15.[2] The motion court denied relief without an evidentiary hearing. Defendant brings appeal 21482 from that order.

We consolidated the appeals, Rule 29.15(*l*), but address them separately in this opinion.

### APPEAL 20255

Defendant presents one point relied on regarding this appeal. It reads:

> The trial court erred in failing to grant [Defendant's] motion for judgment of acquittal at the close of all of the evidence because the court should have found that the State failed to present sufficient evidence from which a reasonable juror might have found the Defendant guilty beyond a reasonable doubt in that the evidence failed to show that [Defendant] sold or offered to sell an investment contract as

that term is defined pursuant to the Uniform Securities Act because there was no showing that the agreements between [Defendant] and the people who paid him money called for them to participate in a common enterprise or that their expectation of profits depended upon the significant managerial efforts of others since [Defendant] unconditionally promised to repay their investment plus interest.

In ruling on Defendant's challenge to the sufficiency of the evidence, this Court's review is limited to determining whether the evidence was sufficient to persuade any reasonable juror as to each of the elements of the crime, beyond a reasonable doubt. *State v. O'Brien*, 857 S.W.2d 212, 215 (Mo. banc 1993). In making that determination, this Court considers all of the evidence in the light most favorable to the prosecution. *Id.* at 215–16. "Thus, evidence that supports a finding of guilt is taken as true and all logical inferences that support a finding of guilt and that may reasonably be drawn from the evidence are indulged." *Id.* at 216. "Conversely, the evidence and any inferences to be drawn therefrom that do not support a finding of guilt are ignored." *Id.*

As to all the investors involved in this case, except those named in Counts III and IV, the evidence shows there was an exchange of money for a written agreement prepared by Defendant.[3] At trial, Defendant readily admitted he made false statements of material facts to his investors in order to obtain money from them. In his brief, Defendant acknowledges that "he made false statements to the victims, to induce them to part with funds." His narrow claim on appeal is that the State failed to adduce sufficient evidence of an "investment contract" between Defendant and investors.

---

1. Statutory references are to RSMo 1994 unless otherwise indicated.

2. Rule references are to Missouri Rules of Criminal Procedure (1995) because Defendant was sentenced May 15, 1995, and filed his motion for postconviction relief December 20, 1995. The current (1998) version of Rule 29.15(m) provides that in such circumstances, postconviction relief is governed by the version of Rule 29.15 in effect when the motion for postconviction relief was filed, or December 31, 1995, whichever is earlier.

3. The investors involved in Counts III and IV parted with their money based on Defendant's oral representations and promises substantially similar to those found in Defendant's written agreements with the other investors. Since Defendant does not contend that an oral contract cannot be an investment contract under § 409.401(*l*), our discussion will not differentiate between Defendant's oral and written agreements.

The State chose to prosecute Defendant under the provisions of § 409.101, which reads:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Section 409.401(*l*) provides that the term security "means any ... investment contract...." However, we find no statutory definition of an investment contract. Therefore, as Defendant states, the real question in this case is whether his agreements with the investors constitute an investment contract so as to violate § 409.101.

■ In *State v. Kramer*, 804 S.W.2d 845 (Mo.App.1991), the Eastern District of this Court determined that an investment contract is (1) an investment of money, (2) in a common enterprise, (3) with the expectation of profit from the significant managerial efforts of others. *Id.* at 849. Here, both sides agree that *Kramer* properly describes an investment contract.

Defendant concedes the State met its burden to show the first element of an investment contract because all the investors advanced money to Defendant believing he would use the funds on his contracted electrical jobs. However, Defendant argues the evidence is insufficient to show element (2), a common enterprise, and element (3), expectation of profit from Defendant's managerial efforts. We disagree.

## COMMON ENTERPRISE

Although no Missouri appellate court has addressed this issue, other state and federal jurisdictions have done so. We look to those decisions for guidance.

Faced with deciding whether the parties were engaged in a "common enterprise," the Supreme Court of Oregon in *Computer Concepts, Inc. v. Brandt*, 310 Or. 706, 801 P.2d 800 (1990), adopted a test for commonality after reviewing other state and federal decisions.[4]

Federal courts have taken two differing views of what constitutes a common enterprise, "horizontal" and "vertical" commonality. Horizontal commonality requires more than one investor and requires a pooling of investments. *Hart v. Pulte Homes of Michigan Corporation*, 735 F.2d 1001 (6th Cir.1984); *Milnarik v. M–S Commodities, Inc.*, 457 F.2d 274, 276–77 (7th Cir.), *cert den.* 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972).

. . . .

Vertical commonality has, in turn, been defined in more than one way. Some courts hold that the investor need prove only dependence on promoter expertise. *Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667, 671 (N.D.Ga.1983); *Alvord v. Shearson Hayden Stone, Inc.*, 485 F.Supp. 848, 853 (D.Conn.1980). Others require a showing that the investment is interwoven with and dependent on the fortunes of others, so that the investor and the promoter can be said to conduct a common venture. *Brodt v. Bache & Co., Inc.*, 595 F.2d 459 (9th Cir.1978). A variation of the latter vertical commonality test requires that the fortunes of the investor and the promoter be intertwined as to both profit *and* loss. *Kaplan v. Shapiro*, 655 F.Supp. 336, 341 (S.D.N.Y.1987); *Mechigian v. Art Capital Corp.*, 612 F.Supp. 1421, 1427 (S.D.N.Y.1985).

*Id.* at 805 (footnote omitted). The Oregon court then confirmed the view that a one-on-one arrangement could qualify as a security if the transaction otherwise fit the definition

---

4. As in this case, the Oregon security law, ORS 59.015(13)(a) (1983), defines "security" to mean, among other things, an investment contract.

of an investment contract and expressly held that either vertical or horizontal commonality suffices for showing a common enterprise. *Id.*

In *Ontario, Inc. v. Mays,* 14 Kan.App.2d 1, 780 P.2d 1126 (1989), the Kansas appellate court determined that a particular financial relationship constituted an investment contract. Under Kansas law, K.S.A. 17–1252(j), the definition of security, includes an investment contract. In discussing the common enterprise element of an investment contract, the court noted that distinctions exist between horizontal and vertical commonality. *Id.* at 1128. However, the court suggested that a "finding of either horizontal or vertical commonality satisfies the common enterprise requirement." *Id.*

■ Defendant makes no effort to persuade us that the State must present evidence of both vertical and horizontal commonality in order to satisfy the common enterprise requirement in this state. We choose to follow *Brandt* and *Mays* and uphold a finding of common enterprise if the State's evidence shows either vertical or horizontal commonality. We take this less restrictive approach because the primary purpose of the Missouri Uniform Securities Act is the protection of buyers of securities. *Garbo v. Hilleary Franchise Systems, Inc.,* 479 S.W.2d 491, 499 (Mo.App.1972). Fulfillment of that statutory purpose "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Id.* (citations omitted).

■ Here, the State presented evidence that Defendant induced at least six investors to part with their money on various phony electrical contracting jobs. Several of the phony jobs were alleged to be at Kraft Foods, Inc., while other phony jobs were with different business entities. The end result is a showing by the State of a pooling of investments with Defendant in order to participate in Defendant's nonexistent electrical contracting business. Thus, the State presented evidence of horizontal commonality even under the federal cases cited in *Brandt*

which require more than one investor and a pooling of investments. For this reason, we need not discuss whether the evidence was sufficient for a finding of vertical commonality.

## EXPECTATION OF PROFITS FROM DEFENDANT'S MANAGERIAL EFFORTS

■ As to this third element of an investment contract, Defendant argues the investors were given no expectation of profit from the significant managerial efforts of Defendant or others. Defendant asserts that the investors could not expect profits from his managerial efforts because he promised to repay their money under any circumstances. Defendant's assertion does not square with his written agreements. An example of his investor agreements is the Bill and Molly Etherton investment contract. The Ethertons are Defendant's victims in Count I of the amended information. Their agreement contains the following provisions:

Let it be known that on Dec. 20, 1993 said parties entered into an agreement on a investment on a job at Kraft Foods # SS847630–Rebc and Reber Electric whom is contracting the above job.

Let it be known that this investment is for a period of 8 months and shall carry a profit of not less than 30% on the investment of $5000 and shall also be forwarded to the investors no later than 5 working days after payment to Reber Electric by Kraft Foods.

Also let it be known that the investors are entitled to a pro-rated profits from any other extra work awarded to Reber Electric while this contract is in force and also any unused investments shall also be returned to the investors along with the 30% profit should any work be completed ahead of the 8 month period. Investors shall also be entitled to any bonuses and or rebates from this job.

First, this agreement contains no unconditional promise by Defendant to repay Ethertons $5,000. The agreement only provides for repayment upon "payment to Reber

Electric by Kraft Foods." Obviously, this promise is conditioned upon Kraft paying Defendant and conditioned upon Defendant performing the alleged contract with Kraft. Furthermore, this agreement promises Ethertons (1) "pro-rated profits" from extra work awarded to Defendant, (2) a return of "unused investments," (3) profit on work "completed ahead" of schedule, and (4) payment of "bonuses or rebates" from Kraft.

Clearly, this agreement and the other agreements Defendant made are far afield from a mere loan as Defendant contends. These agreements fulfill the third element of an investment contract because the investors were given the expectation of profits only after Defendant's managerial efforts completed his electrical contracting work.

Therefore, we hold that the State's evidence was sufficient for a reasonable juror to conclude that Defendant sold investment contracts to the investors in his phony scheme. Point denied.

*Appeal 21482*

Defendant's sole point relied on in this appeal avers the motion court erred in denying his motion for postconviction relief without an evidentiary hearing even in the absence of a request for hearing because his motion recited facts unrefuted by the record which, if true, would warrant relief.

█ Our review of the motion court's order is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. Rule 29.15(j). *State v. Johnson,* 901 S.W.2d 60, 62 (Mo. banc 1995). Such findings and conclusions are clearly erroneous only if a full review of the record definitely and firmly reveals that a mistake was made. *Id.*

█ To warrant an evidentiary hearing on a postconviction relief motion, Defendant must (1) plead facts warranting relief, (2) show these facts are not refuted by the record, and (3) demonstrate prejudice. *State v. Swims,* 966 S.W.2d 368, 369 (Mo.App.1998).

Here, Defendant's motion alleged the following facts as grounds for relief:

(b) There was a tremendous amount of publicity in Newton and McDonald Counties that I was suspected of killing Don Barnett and his wife. The publicity was so great that I was granted a change of venue to Greene County. Judge Perigo was afraid that he might be perceived by Newton and McDonald County residents as being too lenient to me and this would hurt his chances for re-election. This fear caused Judge Perigo to make rulings against me during the trial where a Judge who was not under public pressure from local voters would not have done so. When it came time for my sentencing Judge Perigo sentenced me to three consecutive five year terms even though he told my attorney that he was going to make the sentences concurrent. This was the result of Judge Perigo's bias and prejudice because of his fear of voter reaction and denied me the right to a fair trial and due process of law. Witnesses are Ross Rhoades and Judge Tim Perigo.

Regardless of the issue on Defendant's untimely request for hearing, the motion court entered findings and conclusions relating to Defendant's substantive claim. We dispose of this appeal on that basis. As to Defendant's claim of bias and prejudice of the trial judge, the motion court found:

While movant does allege the existence of two witnesses, he does not allege that these witnesses would testify at an evidentiary hearing to any particular facts. Nor does he identify what the rulings against him during his trial were.

Moreover, the record does not show that the trial court was biased against movant. On the contrary, it shows that the trial court was not biased against movant. In particular, the record shows that the jury recommended five years sentences for each of the twelve counts securities fraud. The trial court could have run all of movant's sentences consecutively so that movant would have been sentenced to sixty years in the custody of the Department of Corrections. However, the trial court did not do that. It only made some of movant's sentences consecutive so that movant was sentenced to a total of fifteen years in

the custody of the Department of Corrections. Movant has failed to show that the trial court was biased against him.

In light of the above, it [sic] this Court orders that movant's motion for post-conviction relief under Rule 29.15 is hereby denied without an evidentiary hearing. Movant failed to timely request an evidentiary hearing. He failed to allege facts, unrefuted by the record, which if true would entitle him to relief. He also failed to prove his claims by a preponderance of the evidence.

The motion court correctly determined that the trial court "could have run all of Movant's sentences consecutively." Section 558.026 provides that "[m]ultiple sentences of imprisonment shall run concurrently unless the court specifies that they shall run consecutively...." In *State v. Williamson,* 836 S.W.2d 490, 500 (Mo.App.1992), Defendant contended the trial court erred in running his sentences consecutively after the jury requested that his sentences "be served concurrently 'if possible.'" In answering this contention, the court said that a "trial court has discretion to determine if sentences should run concurrently or consecutively." *Id.* Regardless of the jury's recommendation, the appellate court found no abuse of trial court discretion and denied the point.

■ The same situation exists here as in *Williamson.* Even though Defendant's jury recommended concurrent sentences, by statute and case law the trial court could have sentenced Defendant to sixty years' imprisonment. Instead, Defendant received a sentence amounting to one-fourth of that time. If Judge Perigo desired to establish a reputation as a tough sentencing judge to enhance his reelection chances, this high profile case provided him with the perfect opportunity. Yet, Judge Perigo exercised his sentencing discretion towards a light sentence by saving Defendant forty-five years off his potential maximum sentence. Thus, as the motion court found, the record refutes any claim of bias and prejudice.

Our review of the record does not leave us with a definite and firm impression that the motion court mistakenly denied Defendant's motion without holding an evidentiary hearing.

The judgments in No. 20255 and No. 21482 are affirmed.

SHRUM, P.J., and PARRISH, J., concur.